STATE of Minnesota, Respondent,

v.

Dwight Earl BOWERS, Appellant.

No. CX–91–292.

Supreme Court of Minnesota.

March 27, 1992.

John Stuart, Minnesota State Public Defender, Elizabeth B. Davies, Sp. Asst. Public Defender, Minneapolis, for appellant.

Dwight Earl Bowers, pro se.

Hubert H. Humphrey, III, Atty. Gen., and Tom Foley, Ramsey County Atty., Steven C. DeCoster, Asst. County Atty., St. Paul, for respondent.

SIMONETT, Justice.

Defendant-appellant appeals from a conviction for first degree murder, claiming the trial court erred in failing to apply a *Batson*-type inquiry when the prosecutor challenged for cause the only black juror on the venire. Appellant also alleges that the evidence does not support the jury's finding of premeditation and intent, that the trial court erred in admitting certain medical statements, and that his counsel was ineffective. We affirm.

On the evening of August 22, 1990, defendant and a group of friends were at a bar in North St. Paul. Defendant had been drinking off and on since around 11:00 a.m. Also at the bar were the victim, Todd Hannestad, Todd Hannestad's girlfriend (Cheryl Ann Guthrie), defendant's ex-girlfriend (Cindy Kling), and another male (Wayne Hoveland). While at the bar, defendant approached this table several times. During one of those stops, defendant put his hand on Cheryl Ann Guthrie. Hannestad removed defendant's hand and told him to leave them alone. A short while later, defendant returned with some friends, telling Hannestad "don't ever put your hands on me." Sometime before closing, Hannestad and his companions left the bar and proceeded to Kling's apartment.

The defendant, who was staying with a friend in the same apartment complex as Kling, left the bar at closing time. After returning to the complex, defendant accompanied a friend (Parris Lambright) to a garage to play chess. Defendant drank some beer and smoked marijuana. A short time later, defendant left the garage and proceeded to Kling's apartment. After being admitted, he told Hannestad "I told you not to mess with me" or "you shouldn't have touched me." A fist fight ensued between defendant and Hannestad, after which Hannestad threw defendant from the apartment and locked the apartment door.

Defendant ran back to the apartment at which he was staying and took a butcher knife from a kitchen drawer. At around 1:30 a.m. (moments after the earlier altercation), defendant returned to Kling's apartment and kicked in the living room window. He lunged at Hannestad and stabbed him in the left side, the blade going in to the hilt, piercing the aorta. Defendant then fled through the broken window and ran into Lambright near some garbage dumpsters, saying "I just stabbed a guy." Lambright took the knife and threw it away. Hannestad died of the stab wound at 2:14 a.m.

Around 7:30 a.m., the police located defendant hiding in a garage and also found the knife on the apartment grounds. After arresting defendant and taking him to Ramsey County Jail, the police took a routine urine sample. Urinalysis revealed that defendant's blood alcohol level at 8:22 a.m. was .11. Expert testimony conflicted on what defendant's blood alcohol level was at the time of the stabbing, or how that level would have affected defendant's ability to plan.

During voir dire, the state moved to strike for cause the only black juror on the venire. The juror disclosed biases against alcohol and persons who abused alcohol, and also against the police. She stated that she would let her personal experience with an alcoholic father sway her judgment and would give lesser weight to police testimony. The defendant's attorney rehabilitated the juror somewhat on her ability to be fair about alcoholism, but not about her feelings about police. The court granted the State's motion to strike the juror for

cause. Defendant, who is black, claims this is error.

## I.

■ The main issue in this case is defendant's claim that a *Batson*-type inquiry should have been applied when the prosecutor challenged for cause the black juror. In *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the Supreme Court held that a defendant's equal protection rights were violated if, after racially neutral procedures were used to select the jury pool, the state could nevertheless exclude members of the defendant's race for racially discriminatory reasons by its use of peremptory challenges. *Id.* 476 U.S. at 86, 106 S.Ct. at 1717. Under *Batson*, the defendant must show that he is a member of a cognizable racial group and that the prosecutor exercised peremptory challenges to remove from the venire members of the defendant's race. Defendant must then show that the facts and circumstances of the case raise an inference that the prosecutor used peremptory challenges to exclude jurors on account of their race. Once proven, the burden shifts to the prosecutor to show a racially neutral explanation for the challenge. *Id.* at 96–97, 106 S.Ct. at 1722–23.

The Supreme Court has expanded the use of *Batson* to peremptory challenges in cases outside of its original context.[1] To our knowledge, however, neither it nor any state court has expanded *Batson* to challenges for cause. The reason, it seems to us, is that peremptory challenges are quite different from challenges for cause. The prosecutor may exercise a peremptory challenge " 'for any reason at all, as long as that reason is related to his view concerning the outcome' of the case to be tried." *Batson v. Kentucky*, 476 U.S. at 89, 106 S.Ct. at 1719 (citation omitted). Peremptory challenges may be based on "sudden

impressions," "gestures," or a mere feeling. *See Swain v. Alabama*, 380 U.S. 202, 220, 85 S.Ct. 824, 835, 13 L.Ed.2d 759 (1965). Challenges for cause, on the other hand, are limited. The trial judge decides whether or not they are granted. Under Minn.R.Crim.P. 26.02, subd. 5(1), the trial court may grant the motion to challenge for cause if satisfied that the juror cannot try the case impartially and without prejudice to the substantial rights of the party challenging. Moreover, if a prosecutor has demonstrated that a challenge for cause is necessary, then *a fortiori* the prosecutor has met the standard required for *Batson*. In discussing the type of proof required for the State to rebut a defendant's prima facie showing, the *Batson* Court emphasized that "the prosecutor's explanation need not rise to the level justifying exercise of a challenge for cause." *Batson*, 476 U.S. at 97, 106 S.Ct. at 1723.

Thus, it would be a rare case indeed in which a *Batson* inquiry would be necessary for a challenge for cause. Nevertheless, it seems to us that a case may arise in which the facts undoubtedly suggest that the prosecutor has challenged for cause a juror for racially discriminatory reasons, and the trial court has erred in granting the motion. We turn to the facts of this case to determine whether this is such a case.

Defendant points out two facts that, he claims, suggest the prosecutor acted with racially discriminatory motives. First, although the juror admitted biases, she also said she could be fair. We find this argument to be without merit. The juror admitted that the presence of alcohol in the case would make it difficult for her to be fair. She said she could not disregard her personal experiences with an alcoholic father nor could she judge appellant fairly. Because of a bad experience with police officers, she stated she would give lesser weight to their testimony. Although defendant's counsel slightly rehabilitated the

---

**1.** For example, *Batson* now applies to civil cases. *Edmonson v. Leesville Concrete Co.,* —— U.S. ——, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991). The defendant in a criminal case, whether white or black, may raise the equal protection claims of jurors excluded by the prosecution because of their race. *Powers v. Ohio,* —— U.S. ——, 111 S.Ct. 1364, 1373, 113 L.Ed.2d 411 (1991). The Court recently granted certiorari on a case involving whether defense attorneys, as well as prosecutors, are subject to *Batson*. *State v. McCollum*, 261 Ga. 473, 405 S.E.2d 688 (1991), *cert. granted sub nom. Georgia v. McCollum,* —— U.S. ——, 112 S.Ct. 370, 116 L.Ed.2d 322 (1991).

juror about her ability to put aside her feelings on alcohol, the juror nevertheless seemed tentative and unconvinced, and the juror never swayed in her bias against police officers. These facts raise no inference of racially discriminatory motive.

Defendant also points out that the prosecutor did not as thoroughly question a white male juror, whose answers suggested he may have had a similar bias against the police. Although defendant's counsel elicited that this juror was "somewhat" unhappy with the way in which the police had treated him when he was arrested for DWI, the State did not pursue this topic in its questioning and accepted the juror. Defendant argues that this failure to question implies discriminatory motive because the State chose not to elicit information that may quite possibly have sustained a challenge for cause.

In analyzing this argument, we are mindful that the parties must have considerable latitude in their questioning of potential jurors and it would be unusual for this court to question a party's failure to address a line of questioning helpful to it.

However, the facts of a case may raise an overwhelming inference that the only reason the State failed to pursue certain inquiries is because the juror was white and it wished to keep the juror on the panel, even while the State inquired about similar facts on all of the black jurors. This is not, however, such a case. The white male juror was the first to be called for voir dire, so the State had not yet questioned the challenged black juror. The questioning on both sides developed more fully in the subsequent 3 days of voir dire. Moreover, the white male juror told the defendant's attorney that he thought the court system was fair, even though he was "somewhat" unhappy with the police. It is possible that the State regarded this statement as positive enough so that it chose not to inquire into the juror's feelings on the police. Also, both the State and the defendant more thoroughly questioned the black woman juror, because her biases against both parties were apparent from the start. Thus, we cannot say that the different questioning in this case raises an inference of racially discriminatory motives.[2]

2. We have carefully reviewed the transcript of the voir dire examination. It is difficult to capture the overall import of what was said by way of any summary or by any paraphrase or selective quotations. Also, unlike the trial judge who was there, we have only the cold record. This having been said, several comments are in order.

The white veniremember was questioned first. After stating he had been treated fairly in the court system for his implied consent hearing, he was asked: "You felt that the police were not fair to you on the road?" A: "Somewhat, somewhat. Just the way that they handled the situation." Defense counsel left the subject but, in further questioning by both defense counsel and the prosecutor, the veniremember said he did not have any strong feelings against people who used alcohol; he reaffirmed his belief in the fairness of the court system and stated that he could be a fair juror.

The black veniremember, first questioned by defense counsel, stated flatly that she had been dissatisfied with the way the police had handled a drug-related incident involving her father. Her dissatisfaction, she explained in answer to a later question, was because "they kind of like caused a different situation than what I like called them there for." Defense counsel did not pursue the subject, but returned to the subject of alcoholism, where the prospective juror had previously indicated she would have difficulty being fair. The veniremember said, "I don't

think I would be judging him [Mr. Bowers] fairly." Defense counsel then got her to agree that she could keep her family history and experience separate from what she might hear in court.

The prosecutor then inquired. It was developed that the police incident had occurred only about 8 months earlier, in March 1990, and that the veniremember's dissatisfaction with the police was their refusal to take her father, who was a user of drugs and was having suicidal reactions, to the hospital. When asked if she might because of this give less weight to police testimony, she replied, "Probably would think like that, yeah." The veniremember said her feelings about alcoholism were strong, and when asked if those feelings might "even unconsciously influence your ability to be neutral and fair to either the defendant or the State and the victim," she replied, "Yeah, I think unconsciously it might." When asked if she could not be fair to the defendant or to the State, she responded, "I think it might be a problem." After several more similar questions and answers, the veniremember was asked, "Would you rather not sit on this case?" A: "Yeah, I'd rather not." When asked why, she responded, "Because just personal experiences with alcoholism, and my background."

With this, the trial court, evidently impressed by the veniremember's expressed bias and preference not to sit and her reasons for not sitting,

Accordingly, we hold that appellant was not denied equal protection when the trial judge refused to require a *Batson* inquiry in this case and that no new trial is necessary.

## II.

■ Appellant argues that the jury could not properly find intent or premeditation because of evidence of his intoxication. Minn.Stat. § 609.075 (1990) provides that "when a particular intent or other state of mind is a necessary element to constitute a particular crime, the fact of intoxication may be taken into consideration in determining such intent or state of mind." Here, the jury heard several witnesses testify to the amount of alcohol defendant consumed during the day and evening of August 22. Defendant's blood alcohol level at 8:22 the next morning was .11. The mere fact of intoxication does not automatically mean, however, that appellant lacked the requisite intent. *State v. Hale*, 453 N.W.2d 704, 707 (Minn.1990), *reh'g denied* (Minn. May 23, 1990). Rather, this is a jury issue, and this court assumes that the jury disbelieved any testimony in conflict with the result it reached. *State v. Flores*, 418 N.W.2d 150, 157 (Minn.1988).

In this case, the jury could reasonably believe that defendant acted with intent and premeditation, despite the fact that he had been drinking. There was tension between appellant and Hannestad all evening. The two had exchanged words while at the bar and later had a fist fight at Kling's apartment. After this scuffle, appellant ran to another apartment, retrieved a knife and returned to Kling's apartment. There, he broke in the front window and lunged at the victim. The time lapse between the fist fight, getting the knife, and returning suggests premeditation and intent. Moreover, experts for both sides testified that the exact effect of alcohol on an individual varies. Thus, the record contains ample evidence to support the jury's conclusion that appellant acted with intent and premeditation.

## III.

■ Appellant argues that the trial court erred in allowing the medical examiner to testify that the depth of the stab wound indicated that the stabbing was an intentional act. We note first that appellant objected too late. Appellant did not object to the questions "Are you able to tell us whether this was or was not a deliberate act?" and "Are you able to tell us whether this was an intentional act?" Rather, appellant objected only after the witness had answered both questions affirmatively. Even had appellant timely objected, it seems to us that the witness, who was a medical examiner speaking from the standpoint of his profession, was only stating the obvious, given that the knife blade measured only 20.2 centimeters and the wound itself was 20.5 centimeters deep. We find no error in admitting this testimony.

In a separate pro se brief, appellant argues that he was denied his sixth amendment right to effective assistance of counsel. Appellant also argues that the prosecutor intentionally misled the grand jury. We have carefully reviewed the record and find both arguments to be without merit. None of the alleged errors to which appellant points has any basis in fact. Moreover, there is no reason to believe that there were errors in the grand jury proceedings. Accordingly, we find no sixth amendment violation.

Affirmed.

WAHL, Justice (dissenting).

I respectfully dissent. The removal of the only black prospective juror for cause,

indicated she would be excused. Defense counsel, however, requested and was given an opportunity to inquire further. The prosecutor supported defense counsel's request. Defense counsel then posed the following leading question: "[A]pparently your feelings about alcohol and alcoholism are not unconscious, are they? You're fairly conscious and cognizant of it?" A: "Yes." Q: "And you know what your feelings are about alcohol?" A: "Yes." The venire-

member, having agreed her feelings about alcoholism were conscious feelings, then was asked if she could "not include them in her deliberations," and the answer was yes. Defense counsel did not ask about the bad experience with the police. The veniremember did not retract her statement that she would rather not serve as a juror, nor did defense counsel run the risk of asking the veniremember if she wanted to retract. The trial judge then excused the juror.

under the facts and circumstances of this case, was a denial of defendant's right to equal protection of the laws requiring a new trial.

For over a hundred years, the United States Supreme Court has been "unyielding in its position that a defendant is denied equal protection of the laws when tried before a jury from which members of his or her race have been excluded by the State's purposeful conduct." *Powers v. Ohio*, —— U.S. ——, 111 S.Ct. 1364, 1367, 113 L.Ed.2d 411 (1991).[1] In denying an individual the opportunity to participate in jury service because of that individual's race, the State also unconstitutionally discriminates against the excluded juror. *Id.* 111 S.Ct. at 1369; *Edmonson v. Leesville Concrete Co.*, —— U.S. ——, 111 S.Ct. 2077, 2080, 114 L.Ed.2d 660, (1991); *Batson v. Kentucky*, 476 U.S. 79, 87, 106 S.Ct. 1712, 1718, 90 L.Ed.2d 69 (1986). Furthermore, "[r]acial bias [within the courtroom] mars the integrity of the judicial system and prevents the idea of democratic government from becoming a reality." *Edmonson*, 111 S.Ct. at 2087. Thus, ultimately, the harm caused by such "discriminatory jury selection extends beyond that inflicted on the defendant and the excluded juror to touch the entire community." *Batson*, 476 U.S. at 87, 106 S.Ct. at 1718.

In *Batson*, the United States Supreme Court held that a criminal defendant "may establish a prima facie case of purposeful discrimination in the selection of the petit jury solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial." *Batson*, 476 U.S. at 96, 106 S.Ct. at 1723. Until *Batson* it

was not possible to scrutinize a prosecutor's motives in using peremptory challenges, unless those motives were volunteered, because a prosecutor was not required to put them on the record. *Batson* laid out a procedure by which the defense could, by establishing a prima facie case of discrimination, overcome the prosecutor's presumption of fairness and shift the burden of proof to the state. *Id.* at 94, 106 S.Ct. at 1721. At this point the prosecution is required to articulate a racially neutral reason for its use of a peremptory challenge, a reason that may then be challenged by the defense as pretextual, examined by the trial court,[2] and, if necessary, reviewed by an appellate court. *Batson*, 476 U.S. at 94, 106 S.Ct. at 1721.

In the case before us, the defendant, a black man, seeks to extend the *Batson* inquiry to the prosecutor's use of challenges for cause. Defendant claims he was denied equal protection of the laws and is entitled to a new trial because the prosecutor removed, for cause, the only black prospective juror—Cheryl Ann Cotton—from the venire panel and defendant was tried by an all white jury for the murder of a white man. The challenge for cause was a pretext for discrimination, defendant argues, because the facts show that the prosecutor's stated reasons for the challenge for cause were not applied consistently to all jurors regardless of race and that Ms. Cotton could have tried the case fairly and impartially.

*Batson* was necessarily limited to the facts before it—the use of peremptory challenges to exclude individuals who have survived a challenge for cause. Nothing in *Batson* suggests, however, that evidence of race discrimination in the use of a challenge for cause may be ignored or that a

---

1. *See also Swain v. Alabama*, 380 U.S. 202, 203–04, 85 S.Ct. 824, 826–27, 13 L.Ed.2d 759 (1965) ("[A] State's purposeful or deliberate denial to Negroes on account of race of participation as jurors in the administration of justice violates the Equal Protection Clause."), *overruled in part by Batson v. Kentucky*, 476 U.S. 79, 87, 106 S.Ct. 1712, 1718, 90 L.Ed.2d 69 (1986); *Strauder v. West Virginia*, 100 U.S. 303, 309, 25 L.Ed. 664 (1879) (Equal Protection Clause of the Fourteenth Amendment guarantees to defendant a trial by a jury "selected without discrimination against his color.").

2. If the facts surrounding the use of challenges suggest racial discrimination, "the court has a duty to satisfy itself that the prosecutor's challenges were based on constitutionally permissible trial-related considerations, and that the proffered reasons are genuine ones, and not merely a pretext for discrimination." *Garrett v. Morris*, 815 F.2d 509, 511 (8th Cir.1987), *cert. denied, Jones v. Garrett*, 484 U.S. 898, 108 S.Ct. 233, 98 L.Ed.2d 191 (1987).

challenge for cause has *a fortiori* met the standard required for *Batson*.[3] It would be untenable to require the trial court to inquire into the possibly discriminatory use of a peremptory challenge and not require a similar inquiry into the use of a challenge for cause if facts surrounding its use suggest that the explanation given is pretextual and a discriminatory motive exists. Indeed, the majority opinion recognizes that "a case may arise in which the facts undoubtedly suggest that the prosecutor has challenged for cause a juror for racially discriminatory reasons and the trial court has erred in granting the motion." At 776. The question before us is whether this is such a case. In my view, it is.

Ms. Cheryl Ann Cotton, the only black potential juror,[4] was subjected to treatment that differed significantly from that given to white potential jurors. Differing treatment can be seen in the type and manner of questioning by which the prosecutor established cause. Ms. Cotton admitted that a family member had difficulties with alcohol. She stated that she could keep her family problems out of the court room, focusing on the evidence presented in this case. She also agreed, when asked by the defense, that there was no "reason that [she] wouldn't want to sit on this case."

The prosecutor then questioned her repeatedly about her attitude towards alcohol. Her responses varied: "[U]nless I have heard the story, then I don't think it would [affect my judgment].": "I think unconsciously [my feelings about alcohol-

ism] might [affect my judgment].": "I think I could listen to [the evidence objectively]. The alcoholism part, that might have some interference, you know, yeah, thinking of it.": "I think I could set [my feelings] aside. As far as like personally, how that individual was on alcohol, aside from this court, as this individual is.": "I think [my feelings] might have a disfavorable effect, because I just—the way I feel so strongly against alcohol, that I could block it out, I mean as far as personal experience is, but just the drinking part, you know, I don't think I would feel comfortable listening to the testimony."

After this extensive questioning, the prosecutor asked: "Would you rather not sit on this case?" Answer: "Yeah, I'd rather not." Prosecutor: "Can you explain to the judge why you would rather not sit on the case?" Answer: "Yes, sir." Prosecutor: "Why is that?" Answer: "Because just personal experiences with alcoholism, and my background." The Court responded: "That certainly is adequate foundation."

The defense asked for and was given an opportunity to redirect on the challenge for cause. During redirect, Ms. Cotton agreed that she could be aware of her feelings and not include them in her deliberations. The prosecutor acknowledged that the attitude Ms. Cotton displayed toward alcohol use was one likely to be favorable to the prosecution and that he was, in fact, challenging her because of her negative experience with the police.[5] Although a potential ju-

---

**3.** The inquiry is different. A challenge for cause requires an examination of situation-specific bias on the part of the potential juror. A *Batson*-type inquiry examines the possibility of racially discriminatory motives on the part of the prosecutor.

The exclusion of an individual juror from a jury "for cause" is rarely litigated, except in death penalty cases. *See, e.g., Gray v. Mississippi,* 481 U.S. 648, 107 S.Ct. 2045, 95 L.Ed.2d 622 (1987). Death penalty cases and cases susceptible to race discrimination make clear that the interests of the defendant in a fair trial are directly affected by the particular makeup of the jury and that the interests of justice require a breadth of experience in a jury.

**4.** Ms. Cotton was the only member of a racial minority in the jury pool. As voir dire was

beginning, defendant's attorney, seeing only one black individual in the jury pool, expressed concern that the jury could be all white and, because the defendant was black and the victim was white, that the possibility of racial bias affecting the outcome of this case existed. Defendant moved to strike the panel. The motion was denied.

**5.** The prosecutor said: "Had she not answered the way she had, I would have been happy to keep her because I have got some black witnesses and it's been my experience that she would work just to the reverse of what is being suggested by the defense. It is my view she would have returned a verdict of guilty. She is predisposed *against people who have this difficulty* [alcoholism]. I challenged for actual or implied bias because of the answers she gave with respect to

ror's negative experience with the police could qualify as a race-neutral reason for excusing the juror for cause, any explanation articulated by the prosecutor must be " 'related to the particular case to be tried.' " *Ex parte Branch*, 526 So.2d 609, 621 (Ala.1987) (quoting *Batson*, 476 U.S. at 98, 106 S.Ct. at 1724; emphasis in original). Importantly, the state's case against defendant here did not rest on the credibility of police testimony.

Ms. Cotton was excused for cause and here the matter would rest, except that the extensive questioning directed toward Ms. Cotton by the prosecutor, questioning designed to invoke a response likely to disqualify her, was not also directed toward a white male venire panel member who had indicated that he had a similar background in regard to alcohol use and possible police bias. The first potential juror questioned, Mr. William Repke, stated, in response to a question by the Court, that he had been arrested several years earlier for a DWI. Mr. Repke stated, in response to questions by the defense, that his father was an alcoholic and that he had observed people who were out of control from too much alcohol. He stated, however, that he understood that this was not an excuse to a crime. The prosecution asked Mr. Repke no questions concerning his attitude towards alcoholism or alcohol use.

In response to a question by the defense, Mr. Repke acknowledged that he felt that he had not been treated fairly by the police during his DWI arrest. The prosecution asked Mr. Repke no questions concerning his attitudes towards the police. Neither attorney asked whether he could set aside his personal feelings concerning the police. Mr. Repke was, however, accepted by both the defense and the prosecution. In light of the prosecutor's decision not to strike, or even to question, a white male potential juror with a background of personal experi-

ences virtually indistinguishable from those of Ms. Cotton, his explanation for the use of a challenge for cause appears to be pretextual.

Rigorous scrutiny by the trial court of the prosecutor's reasons for challenges where an inference of race discrimination has been established is necessary to separate "valid racially neutral reasons from pretexts designed to hide discriminatory purpose." *State v. Collier*, 553 So.2d 815, 818 (La.1989). The prosecutor's reasons must be considered in light of the susceptibility of the particular case to race discrimination. In determining the susceptibility to race discrimination, the court may consider the race of the defendant, the victim and the primary witnesses. *State v. Butler*, 731 S.W.2d 265, 269 (Mo.App.1987). The trial court must examine the reason itself to determine if, for instance, it is obviously contrived or insufficiently related to the facts of the case at hand. The presence of one or more of the following fact patterns would tend to raise an inference of discrimination and "would weigh against the legitimacy of a race-neutral explanation":

> * * * (2) failure to examine the juror or perfunctory examination, assuming neither the trial court nor opposing counsel had questioned the juror, (3) singling the juror out for special questioning designed to evoke a certain response, (4) the prosecutor's reason is unrelated to the facts of the case, and (5) a challenge based on reasons equally applicable to juror[s] who were not challenged.

*State v. Slappy*, 522 So.2d 18, 22 (Fla.), *cert. denied, Florida v. Slappy*, 487 U.S. 1219, 108 S.Ct. 2873, 101 L.Ed.2d 909 (1988); *see also Branch*, 526 So.2d at 623 (listing, in addition, the prosecutor's use of challenges to dismiss all or most black jurors). The trial court must evaluate the prosecutor's reasons for the use of chal-

the officer and the answer she gave to the defense and to me that she couldn't be fair." The defense responded: "Your Honor, but she did say that she could be fair." The Court: "She didn't." Defense: "Yes, she did." The Court: "Well, I am not going to argue with you, we're going to call the next juror."

Ms. Cotton had acknowledged that she was dissatisfied with the manner in which the police

had handled a situation involving her father. In his questioning, the prosecutor asked: "If police officers were called to testify in this case, do you think you might give some lesser weight to what they said because of the situation that happened some time back?" Ms. Cotton responded: "Probably would think like that, yeah." No further questions were asked regarding her attitudes towards the police.

lenges, in light of the particular facts and circumstances of the case, as he or she would weigh any disputed fact. *Slappy*, 522 So.2d at 22. If the reasons are found to be pretextual, the challenge for cause must be denied.

An independent review of the record, in light of the facts and circumstances of this case, requires a finding that the prosecutor's proferred reasons for removing the only black potential juror for cause are pretextual. The trial court erred in granting the motion to remove. I would reverse and remand for a new trial.