*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1853**

State of Minnesota,
Respondent,

vs.

Calvin James Jennings,
Appellant.

**Filed November 16, 2015
Affirmed
Johnson, Judge**

Hennepin County District Court
File No. 27-CR-13-22830

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Elizabeth R. Johnston, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Richard Schmitz, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Kirk, Presiding Judge; Johnson, Judge; and Bjorkman, Judge.

**U N P U B L I S H E D   O P I N I O N**

**JOHNSON**, Judge.

A Hennepin County jury found Calvin James Jennings guilty of first-degree burglary based on evidence that he climbed through a window of an apartment and stole a

purse.  On appeal, Jennings argues that the district court erred by dismissing a prospective juror for cause and by admitting into evidence an audio-recording of a 911 call.  We affirm.

**FACTS**

On July 13, 2013, at approximately 5:00 a.m., law enforcement received a 911 call from a person who said that he was watching a man break into an apartment across the street from his home.  The caller described his observations to the dispatcher as he perceived them.  The caller watched and spoke as the intruder opened a ground-floor window, crawled in, and crawled out with a purse in his hand.  Meanwhile, the dispatcher sent officers to the scene, who found a man holding a purse.  As the officers seized and detained the intruder, the caller confirmed for the dispatcher that the officers had apprehended the person who had entered and exited the apartment.

The state charged Jennings with first-degree burglary.  *See* Minn. Stat. § 609.582, subd. 1(a) (2012).  The case went to trial in May 2014.  At the beginning of trial, the prosecutor informed the district court that the 911 caller, whom the state had listed as a trial witness, was unavailable to testify because he was out of town.  The state moved *in limine* for a ruling that an audio-recording of the 911 call could be admitted into evidence in lieu of the caller's testimony.  Jennings objected on the ground that admission of the audio-recording would violate his rights under the Confrontation Clause.  The district court granted the state's motion, and the audio-recording was played for the jury.  The state also provided a transcript of the audio-recording to the jury.

During voir dire, the state challenged two members of the venire panel for cause. One prospective juror, I.R., is an African American; the other prospective juror, J.L., is white. Jennings objected to both of the state's challenges. The district court sustained the state's challenge to I.R. and overruled the challenge to J.L.

The jury found Jennings guilty. The district court imposed a sentence of 54 months of imprisonment. Jennings appeals.

## D E C I S I O N

### I. Dismissal of Prospective Juror

Jennings argues that the district court erred by sustaining the state's for-cause challenge to prospective juror I.R. Jennings's argument has two parts.

### A. Basis of Challenge for Cause

Jennings first argues that the district court erred by sustaining the state's for-cause challenge to I.R. because the reason for her dismissal, dishonesty, is not a valid basis of a for-cause challenge.

The dismissal of persons from a venire panel for cause is governed by rule 26.02, subdivision 5, of the Minnesota Rules of Criminal Procedure. The rule provides 11 grounds on which a juror may be challenged for cause. Minn. R. Crim. P. 26.02, subd. 5(1); *State v. Roan*, 532 N.W.2d 563, 568 (Minn. 1995). Among them is the situation in which a prospective juror's "state of mind . . . satisfies the court that the juror cannot try the case impartially and without prejudice to the substantial rights of the challenging party." Minn. R. Crim. P. 26.02, subd. 5(1)1. The party challenging a prospective juror on this ground has the burden of establishing that the prospective juror has "actual bias"

3

toward the case or either party. *State v. Munt*, 831 N.W.2d 569, 577 (Minn. 2013). To satisfy that burden, the challenging party must show more than the "'mere existence of any preconceived notion as to the guilt or innocence of the accused'"; the challenging party must show a "'strong and deep impression[]' that would prevent the prospective juror from "'lay[ing] aside [an] impression or opinion.'" *Id.* (quoting *Irvin v. Dowd*, 366 U.S. 717, 722-23 & n.3, 81 S. Ct. 1639, 1642-43 & n.3 (1961)). The district court is in the best position to determine whether a prospective juror can be an impartial juror because the district court can assess the prospective juror's demeanor and credibility. *See State v. Logan*, 535 N.W.2d 320, 323 (Minn. 1995); *State v. Drieman*, 457 N.W.2d 703, 708-09 (Minn. 1990). This court applies an abuse-of-discretion standard of review to a district court's dismissal of a prospective juror for cause. *Munt*, 831 N.W.2d at 576.

During voir dire, the district court asked certain questions of the venire panel, including the following question: "Are there any among you who aside from a minor non-alcohol related traffic offense, other than that, anybody ever been either arrested, accused or charged with a crime?" I.R. raised her hand and said that she had been convicted of a drug crime but was treated fairly and could be an impartial juror. The prosecutor later asked I.R. if she had had any other interactions with police. I.R. responded, "No, sir." The prosecutor challenged I.R. for cause. The prosecutor stated his reasons for the challenge as follows:

> I asked [I.R.] if she had any [other] prior contacts with the police or arrests and she indicated no. And as I indicated to [defense counsel], she has seen as well that that particular juror has a number of entries in MNCIS indicating that she has had arrests and even a couple of convictions, although

4

they're not felony convictions. She has had more involvement with the police.

In overruling Jennings's objection to the challenge and sustaining the challenge, the district court stated, "I will grant the State's motion to dismiss juror number 15 for cause based on her untruthfulness."

Jennings is correct that untruthfulness or dishonesty is not mentioned in the applicable rule as one of the grounds for dismissal of a prospective juror for cause. *See* Minn. R. Crim. P. 26.02, subd. 5(1). But the state does not contend that dishonesty alone is a ground for a challenge for cause; rather, the state contends that I.R.'s dishonesty demonstrates bias, which is a recognized ground for a challenge for cause, because her dishonesty supports an inference that she did not disclose prior interactions with law enforcement in order to conceal a bias against the state. We are not aware of any Minnesota caselaw that either endorses or forecloses the state's argument. Accordingly, we accept the state's premise that evidence of dishonesty may allow a district court to infer, as a factual matter, the existence of bias.

The district court's finding of bias may be discerned from the record. It is undisputed that the prosecutor determined that I.R. did not disclose occasions on which she had been arrested and convicted. The record supports the state's contention that the prosecutor was focused on I.R's dishonesty due to a concern that I.R. was harboring a bias against the state. Neither Jennings's trial attorney nor the district court questioned the logic of the prosecutor's challenge. It appears that the district court adopted the prosecutor's suggested inference that I.R.'s untruthfulness showed that she harbored a

5

bias against the state. Such a finding may be implied from the record. *See State v. Alvarez*, 820 N.W.2d 601, 620 (Minn. App. 2012) (affirming district court's ruling on hearsay exception based on implied findings), *aff'd*, 836 N.W.2d 527 (Minn. 2013). We must defer to the district court's implied finding of bias in these circumstances because of the district court's opportunity to assess a prospective juror's demeanor and credibility. *See Munt*, 831 N.W.2d at 576; *Logan*, 535 N.W.2d at 323; *Drieman*, 457 N.W.2d at 708-09.

Thus, the district court did not abuse its discretion by finding that prospective juror I.R. was biased against the state and by sustaining the state's for-cause challenge on that basis.

**B.     Alleged Racial Motive**

Jennings also argues that the district court erred by sustaining the state's challenge to I.R. on the ground that the challenge was motivated by her race.

The Fourteenth Amendment to the United States Constitution prohibits purposeful discrimination based on race in jury selection. *Batson v. Kentucky*, 476 U.S. 79, 86-87, 106 S. Ct. 1712, 1717-18 (1986); *State v. Diggins*, 836 N.W.2d 349, 354 (Minn. 2013). In *Batson*, the United States Supreme Court established a three-step process for resolving a defendant's objection to a peremptory challenge of a prospective juror based on an allegation of racial discrimination. *Diggins*, 836 N.W.2d at 354. "First, the defendant must make a 'prima facie showing' that the state exercised its peremptory challenge against a prospective juror on the basis of race." *Id.* (quoting *Hernandez v. New York*, 500 U.S. 352, 358, 111 S. Ct. 1859, 1866 (1991)). Second, if the defendant has satisfied

his burden at the first step, the burden shifts to the state to "articulate a race-neutral explanation" for the peremptory challenge. *Id.* Third, if the state has satisfied its burden at the second step, "the district court must determine whether the defendant has 'carried his burden of proving purposeful discrimination.'" *Id.* at 355 (quoting *Hernandez*, 500 U.S. at 359, 111 S. Ct. at 1866); *see also* Minn. R. Crim. P. 26.02, subd. 7(3) (incorporating *Batson* analysis into rules of criminal procedure).

Jennings relies on *Batson* even though he is attacking a for-cause challenge, not a peremptory challenge. Our supreme court twice has considered arguments similar to Jennings's argument. In *State v. Bowers*, 482 N.W.2d 774 (Minn. 1992), the supreme court declined to extend *Batson* to an appeal that concerned a challenge for cause. *Id.* at 776-78. The supreme court reasoned that peremptory challenges and for-cause challenges are significantly different in that a prosecutor may exercise a peremptory challenge for almost any reason, but a challenge for cause may be exercised only in limited circumstances. *Id.* at 776. The supreme court also reasoned that "if a prosecutor has demonstrated that a challenge for cause is necessary, then *a fortiori* the prosecutor has met the standard required for *Batson*." *Id.* The supreme court nevertheless noted that a *Batson* analysis may be appropriate in "a rare case" in which "the facts undoubtedly suggest that the prosecutor has challenged for cause a juror for racially discriminatory reasons, and the trial court has erred in granting the motion." *Id.* The supreme court ultimately concluded in *Bowers* that the record did not give rise to an inference of a racially discriminatory motive. *Id.* at 777. More recently, in *State v. Riddley*, 776

7

N.W.2d 419 (Minn. 2009), the supreme court again considered a request to extend *Batson* to a for-cause challenge and rejected it for similar reasons. *See id.* at 430-31.

Jennings also relies on *Batson* on appeal even though he did not assert a *Batson* objection in the district court. Because Jennings did not invoke *Batson* during voir dire, the district court did not conduct the three-step, burden-shifting *Batson* analysis and, more specifically, did not make any findings related to whether the state's for-cause challenge was motivated by I.R.'s race. The state contends that this court should not consider Jennings's *Batson* argument on appeal because the argument was not properly preserved. It is unclear from *Bowers* and *Riddley* whether an allegation of a racial motive in a for-cause challenge is amenable to appellate review in the absence of a *Batson* objection during voir dire. *See id.* at 430-31; *Bowers*, 482 N.W.2d at 776-78. For purposes of this opinion, we will assume without deciding that an appellate court may apply *Bowers* and *Riddley* even though a defendant-appellant did not object on *Batson* grounds during voir dire.

The record of voir dire proceedings in this case does not indicate that the prosecutor challenged I.R. for cause because of her race. As described above, the state challenged I.R. for cause because she attempted to conceal information about her interactions with the criminal justice system, which caused the prosecutor and the district court to believe that she was biased. We have concluded that the district court did not abuse its discretion by sustaining the state's for-cause challenge. *See supra* part I.A. For that reason alone, we may conclude that "the prosecutor has met the standard required for *Batson*." *See Bowers*, 482 N.W.2d at 776.

8

Jennings nonetheless contends that the prosecutor's challenge was racially motivated because the prosecutor's office has challenged other African American prospective jurors in other cases in similar ways. Jennings cites two other cases that were tried in Hennepin County in which, he asserts, prospective jurors were questioned about their prior contacts with the criminal justice system and then challenged for cause due to dishonesty. In response, the state contends that Jennings has not established a *prima facie* case of discrimination because the prosecutor in this case also researched the criminal record of a non-African American prospective juror. The state also contends that it had a non-discriminatory reason for challenging I.R., namely, that she was biased against the state, as evidenced by her concealment of her prior interactions with the criminal justice system. The state further contends that Jennings's argument relies on information that is outside the record of this case and does not consider all relevant facts.

Each of the state's contentions is persuasive. If we consider only the facts in the record of this case, we do not have a basis for concluding that the prosecutor challenged I.R. because of her race. If we were to consider the information presented by Jennings's appellate counsel concerning other cases tried in Hennepin County, we would reach the same conclusion because we would recognize that a more fulsome record would need to be made, in an adversarial proceeding in which each party has an opportunity to present evidence and test the opposing party's evidence, before a finding of discrimination could be made pursuant to *Bowers* and *Riddley*. All things considered, the facts of this case do *not* "undoubtedly suggest that the prosecutor has challenged for cause a juror for racially

discriminatory reasons." *See Bowers*, 482 N.W.2d at 776; *see also Riddley*, 776 N.W.2d at 430-31.

Thus, the district court did not err by not conducting a *Batson* analysis and by not finding *sua sponte* that the prosecutor challenged I.R. for cause because of her race.

## II. Audio-Recording

Jennings also argues that the district court erred by admitting into evidence the audio-recording of the 911 call. Specifically, Jennings argues that the admission of the audio-recording violated his rights under the Confrontation Clause.

The Sixth Amendment to the United States Constitution provides, "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI; *see also* Minn. Const. art. I, § 6. The Confrontation Clause bars the admission of testimonial statements of a witness, with limited exceptions. *Crawford v. Washington*, 541 U.S. 36, 53-54, 124 S. Ct. 1354, 1365-66 (2004). If a statement is testimonial, its admission violates the Confrontation Clause, unless the person who made the statement is unavailable and the defendant has had a prior opportunity to cross-examine the person. *See id.* at 53-54, 124 S. Ct. at 1365. If a statement is nontestimonial, the statement is not inadmissible because of the Confrontation Clause. *See Davis v. Washington*, 547 U.S. 813, 840, 126 S. Ct. 2266, 2284 (2006). This court applies a *de novo* standard of review to a district court's decision to admit a statement despite an objection based on the Confrontation Clause. *State v. Caulfield,* 722 N.W.2d 304, 308 (Minn. 2006).

To determine whether a statement is admissible, a court first must determine whether the statement is testimonial in nature. *See Davis*, 547 U.S. at 821, 126 S. Ct. at 2273. Whether a statement is testimonial turns on the primary purpose of the interrogation or reason for the statement. *See id.* at 822, 126 S. Ct. at 2273-74. If the primary purpose is to "establish or prove past events" for purposes of later criminal prosecution, the statement is considered to be testimonial in nature. *Id.* But if the primary purpose is to enable police to meet an ongoing emergency, the statement is considered nontestimonial. *Id.* at 822, 126 S. Ct. at 2273.

Both the United States Supreme Court and the Minnesota Supreme Court have considered the admissibility of audio-recordings of 911 calls. In *Davis*, a woman called 911 during a domestic assault against her in her home, and the 911 operator asked the woman a series of questions. *Id.* at 817-18, 126 S. Ct. at 2270-71. The Supreme Court concluded that the woman's statements to the 911 operator were admissible because their primary purpose was to assist police in responding to an ongoing emergency. *Id.* at 828, 126 S. Ct. at 2277. The Court reasoned that the woman was describing events as they were happening, that the woman was facing an emergency, that the 911 operator's questions and the woman's answers were necessary to resolve the emergency, and that the communications between the 911 operator and the woman were informal. *Id.* at 827, 126 S. Ct. at 2276-77. In *State v. Wright*, 726 N.W.2d 464 (Minn. 2007), two sisters called 911 following an assault at their home, and they expressed concern that the assailant would return. *Id.* at 467-68. The Minnesota Supreme Court held that the women's statements to the 911 operator were admissible because, as in *Davis*, their

11

primary purpose was to enable police to meet an ongoing emergency. *Id.* at 474-75. The 911 operator did not attempt to establish or prove past facts; her purpose was to reassure the callers that the emergency was over. *Id.* at 475. Likewise, the purpose of the women's comments was to ascertain that the emergency was indeed over rather than to establish or prove past events. *Id.*

The district court in this case ruled that the audio-recording of the 911 call is non-testimonial and, thus, admissible. The district court reasoned that the caller initiated the conversation for the purpose of obtaining assistance for the victim of a crime, that the 911 operator spoke to the caller to obtain information that would help law enforcement respond to an ongoing emergency, that the conversation was not formal or structured, and that the caller made his statements while he was observing the crime. The district court's reasons for deeming the 911 call to be nontestimonial are consistent with, if not compelled by, *Davis* and *Wright*. We acknowledge that the *Davis* and *Wright* opinions do not establish a categorical rule concerning 911 calls because a case-by-case analysis is required. *See Davis*, 547 U.S. at 822, 126 S. Ct. at 2273-74; *Wright*, 726 N.W.2d at 471. Yet the opinions are very instructive because of their similarity to this case.

Furthermore, the district court's reasons are supported by the record. The caller described events as they were actually happening. For example, the audio-recording reveals that he said to the 911 dispatcher, "You need to come quick . . . . I'm watching from across the street. I think someone's breaking in . . . through their window." The 911 dispatcher asked questions that were intended to resolve the ongoing emergency. The 911 dispatcher informed the caller when police officers were en route, which helped

12

the caller identify Jennings after he was seized. The conversation was informal and unstructured in that the caller's statements were made frantically as he witnessed a tense situation.

Thus, the district court did not err by ruling that the caller's statements to the 911 dispatcher were nontestimonial such that the audio-recording of the call was admissible despite the Confrontation Clause.

**Affirmed.**