STATE of Minnesota, Respondent,

v.

**Cecil John REINERS, Appellant.**

**No. C7–01–1001.**

Court of Appeals of Minnesota.

May 21, 2002.

Mike Hatch, Attorney General, St. Paul; and Amy Klobuchar, Hennepin County Attorney, Jean E. Burdorf, Assistant County Attorney, Minneapolis, for respondent.

Robert D. Sicoli, Sarah M. Aho, Thompson, Sicoli & Aho, Ltd., Minneapolis, for appellant.

Considered and decided by
PETERSON, Presiding Judge,
HALBROOKS, Judge, and HUSPENI,
Judge.*

## OPINION

HALBROOKS, Judge.

Appellant challenges his conviction for first-degree assault, arguing that the trial court abused its discretion by denying one of appellant's peremptory jury strikes. Because the trial court improperly placed the burden on appellant to articulate a persua-

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

sive reason for the strike, we reverse and remand for a new trial.

## FACTS

Appellant Cecil Reiners owns Bloomington Steel and Supply, a structural-steel fabrication company. Since 1997, Bloomington Steel has leased a portion of its warehouse to a business called Keystar. Both Bloomington Steel and Keystar have Spanish-speaking employees. Appellant attempted to enforce an English-only policy in the warehouse, and believed that Spanish-speaking Keystar employees were bothering his employees.

On October 18, 2000, appellant told Jose Padilla, a Spanish-speaking Keystar employee, to take his lunch break away from appellant's employees. By appellant's account, Padilla then threw a piece of wood at appellant, striking him in the forehead. Appellant next hit Padilla over the head with a two-by-four, injuring him severely. Appellant was arrested and charged with first-degree assault in violation of Minn. Stat. § 609.221, subd. 1 (2000).

The case went to trial in March 2001. The second prospective juror examined by the attorneys was Ms. Norman, an African-American woman. In response to appellant's questions, Norman stated that her father had been a police officer in Atlanta for about nine years and that she had trained at the police academy in high school and had considered becoming a police officer herself. Norman said that her father's profession would not affect her ability to fairly judge police testimony or police actions.

Appellant moved to use a peremptory strike to remove Norman. Respondent objected pursuant to *Georgia v. McCollum,* 505 U.S. 42, 112 S.Ct. 2348, 120 L.Ed.2d 33

Minn. Const. art. VI, § 10.

(1992), which prohibits the use of peremptory strikes by criminal defendants in a racially discriminatory manner. Appellant argued that he intended to significantly challenge the motives and actions of the police officers who arrested appellant and investigated allegations against him, and that Norman's police connections would inhibit her fair assessment of police testimony.

Respondent argued that appellant's reasons for striking Norman were pretextual and that the attempted strike constituted intentional racial discrimination. Respondent contended that (1) Norman was one of only a few minorities on the jury panel, (2) appellant's alleged victim, a Hispanic man, was also a minority, and (3) Norman had indicated that her father's profession would have no influence on her ability to be a fair juror. Appellant argued that he was not required, under *McCollum*, to seat a juror merely because the juror claims she can be fair or to prove that the juror could not be impartial, as long as the reason for the strike is race-neutral and reasonable.

The trial court sustained respondent's *McCollum* challenge, concluding that appellant's reasons for striking Norman were pretextual because (1) Norman's assertion that "she would not believe a person just because they were a police officer * * * supports [appellant's] side of the case more so than it does the state," and (2) "[m]ost of [Norman's] answers * * * were more favorable to [the defense] than to the state." Norman was seated.

The jury found appellant guilty as charged, and the trial court sentenced appellant to 91 months in prison. This appeal follows.

### ISSUES

1. Did the trial court err by denying appellant's motion to exercise a peremptory challenge against Norman?

2. What is the appropriate relief for the erroneous denial of a peremptory challenge?

### ANALYSIS

Appellant challenges the trial court's denial of his attempt to exercise a peremptory strike against an African-American venireperson, arguing that the court improperly shifted the burden of persuasion by requiring him to prove that the strike was not racially motivated. Appellant contends that the proper remedy for the erroneous denial of a peremptory challenge is a new trial. Appellant also challenges various evidentiary rulings.

### I.

The Equal Protection Clause of the United States Constitution "prohibits a criminal defendant from engaging in purposeful discrimination on the ground of race in the exercise of peremptory challenges." *Georgia v. McCollum*, 505 U.S. 42, 59, 112 S.Ct. 2348, 2359, 120 L.Ed.2d 33 (1992). *Batson v. Kentucky*, 476 U.S. 79, 96-98, 106 S.Ct. 1712, 1723-24, 90 L.Ed.2d 69 (1986), established a three-step process to determine whether a peremptory challenge brought by the state is motivated by discriminatory intent. The *Batson* process is applied in Minnesota and has been incorporated into the Minnesota Rules of Criminal Procedure. *See* Minn. R. Crim. P. 26.02, subd. 6a(3); *State v. James*, 638 N.W.2d 205, 209 (Minn.App.2002). *McCollum* extended the *Batson* process to cases involving peremptory challenges brought by criminal defendants. 505 U.S. at 59, 112 S.Ct. at 2359. We are aware of only one published Minnesota case considering a *McCollum* or *Batson* challenge brought by the state. *See State v. Spears*, 560 N.W.2d 723, 726 (Minn.App.1997) (sustaining

state's challenge to defense's peremptory strike on the grounds that the defense's use of the peremptory strike was motivated by intentional discrimination).

■ To make a *McCollum* challenge, the state must first make a prima facie showing that appellant exercised a peremptory challenge on the basis of race. *Batson*, 476 U.S. at 96, 106 S.Ct. at 1723. Second, the burden shifts to the defense to articulate a race-neutral reason for the challenge. *Id.* at 97, 106 S.Ct. at 1723. The race-neutral reason need not be

> persuasive, or even plausible. "At this step of the inquiry, the issue is the facial validity of [appellant's] explanation. Unless a discriminatory intent is inherent in [appellant's] explanation, the reason offered will be deemed race neutral."

*Purkett v. Elem*, 514 U.S. 765, 768, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 834 (1995) (quoting *Hernandez v. New York*, 500 U.S. 352, 360, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395 (1991)).

■ "[T]he trial court must then decide * * * whether the opponent of the strike has proved purposeful racial discrimination." *Purkett*, 514 U.S. at 767, 115 S.Ct. at 1770-71. This factual determination typically turns largely on a credibility evaluation by the trial court. *State v. James*, 520 N.W.2d 399, 403-04 (Minn. 1994); *State v. McRae*, 494 N.W.2d 252, 254 (Minn.1992). "[T]he ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." *Purkett*, 514 U.S. at 768, 115 S.Ct. at 1771. We review the trial court's decision on a *McCollum* challenge only for clear error, giving considerable deference to the trial court's finding of discriminatory purpose or intent. *McRae*, 494 N.W.2d at 254 (citing *Hernandez*, 500 U.S. at 364-69, 111 S.Ct. at 1868-71).

■ We first address the considerable differences between challenges for cause and peremptory challenges. Challenges for cause allow the removal of jury panel members only "on a narrowly specified, provable and legally cognizable basis of partiality." *Swain v. Alabama*, 380 U.S. 202, 220, 85 S.Ct. 824, 836, 13 L.Ed.2d 759 (1965), *overruled on other grounds by Batson*, 476 U.S. at 92-93, 106 S.Ct. at 1720-21.

> A motion to excuse a venire member for cause * * * must be supported by specified causes or reasons that demonstrate that, as a matter of law, the venire member is not qualified to serve.

*Gray v. Mississippi*, 481 U.S. 648, 652 n. 3, 107 S.Ct. 2045, 2048 n. 3, 95 L.Ed.2d 622 (1987). Partiality may be established by showing a personal relationship with a party, or attorney in the litigation, or a biased state of mind concerning a party or issue in the case. Minn. R. Crim. P. 26.02, subd. 5(1).

■ By contrast, a party may exercise a peremptory challenge "without showing any cause at all." *Lewis v. United States*, 146 U.S. 370, 376, 13 S.Ct. 136, 138, 36 L.Ed. 1011 (1892) (quotation omitted). The peremptory challenge is "exercised without a reason stated, without inquiry and without being subject to the court's control," and permits rejection "for a real or imagined partiality that is [not] easily designated or demonstrable." *Swain*, 380 U.S. at 220, 85 S.Ct. at 836. The party making a peremptory challenge is not required to show that the challenged juror could not be impartial. *See Batson*, 476 U.S. at 97, 106 S.Ct. at 1723 ("we emphasize that [counsel's] explanation need not rise to the level justifying exercise of a challenge for cause.").

Appellant argues that the trial court erred by rejecting his race-neutral reason for striking Norman on the grounds that

appellant failed to persuasively show that Norman could not fairly assess police testimony. Appellant contends that the trial court applied a challenge-for-cause standard in analyzing his peremptory challenge, and that respondent did not meet its burden of showing that appellant's challenge was motivated by discriminatory intent. We agree.

■ The trial transcript indicates that a substantive discussion of the *McCollum* challenge began with the trial court asking appellant to explain why he struck Norman. Therefore, we need not address the issue of respondent's prima facie case. *See State v. Scott,* 493 N.W.2d 546, 548 (Minn. 1992) (citing *Hernandez,* 500 U.S. at 359, 111 S.Ct. at 1866) (where the district court proceeds directly to the second step in the process, the issue whether the state established a prima facie case of the discriminatory use of a peremptory strike is moot).

■ Appellant excused Norman on the grounds that her ability to fairly assess police testimony could be compromised because her father is a policeman and because Norman herself had briefly trained to be a police officer. We conclude that this is a valid, race-neutral reason. *See Batson,* 476 U.S. at 98 n. 20, 106 S.Ct. at 1724 n. 20 (noting that a prosecutor may ordinarily exercise a peremptory challenge "for any reason at all, as long as that reason is related to his view concerning the outcome of the case to be tried" (quotation omitted)); *State v. DeVerney,* 592 N.W.2d 837, 843 (Minn.1999) (stating that the explanation need not be "valid in the sense of establishing a reasonable basis for challenge, * * * persuasive, or even plausible" as long as it is race-neutral and not inherently discriminatory (citations and quotations omitted)).

Both this court and the Minnesota Supreme Court have repeatedly held that a family member's involvement or experience with the legal system is a race-neutral reason for striking a juror for the purposes of a *Batson/McCollum* challenge. *See, e.g., State v. Martin,* 614 N.W.2d 214, 222 (Minn.2000) (juror's father's conviction and imprisonment during juror's formative years is a valid race-neutral reason to strike juror); *DeVerney,* 592 N.W.2d at 843 (Native American prospective juror's negative feelings towards government and law enforcement, sympathy for imprisoned brother, and history of seriously assaulting family members were sufficient race-neutral reasons to strike); *State v. Scott,* 493 N.W.2d 546, 549 (Minn.1992) (allowing state to strike only African-American juror because juror's family had recently been involved with the county sheriff's office as a result of juror's husband's threat to kill juror's stepson); *State v. Weatherspoon,* 514 N.W.2d 266, 268-69 (Minn.App.1994) (three-year-old accusation that African-American juror's brother was selling drugs was a valid race-neutral reason to strike juror).

In *Weatherspoon,* we included "prior involvement by juror or family member with the law" on a list of "objective and more easily verifiable race-neutral grounds for striking a juror." *Id.* at 269. Although "prior involvement by juror or family member with the law" has historically meant that an individual was investigated or incarcerated, we see no reason that a juror or family member's experience enforcing the law would not also constitute a race-neutral reason to exclude a juror.

■ Once appellant stated his race-neutral reasons for striking Norman, and expressly denied that the strike was racially motivated, the trial court's proper inquiry was not whether appellant's race-neutral reasons were "suspect, or weak, or irrational, but whether [appellant was] telling the truth in his * * * assertion that

the challenge is not race-based." *United States v. Bentley-Smith*, 2 F.3d 1368, 1375 (5th Cir.1993). The question is not whether the reasons given were sufficient in the court's view to justify the strike; a defendant may exercise a peremptory strike for any reason except discrimination on the basis of race or gender. The question is whether the strike was motivated by discriminatory intent.

The record indicates that the trial court erroneously weighed the sufficiency of appellant's proffered reason for striking Norman. The trial court's own description of its reasoning indicates that it denied the peremptory strike because appellant's race-neutral reasons failed to show that Norman could not be impartial and because Norman credibly claimed she could be. As appellant correctly argues, showing partiality is the standard required to exercise a challenge for cause, and requiring appellant to meet this standard when making a peremptory challenge is error. *See Batson*, 476 U.S. at 96 98, 106 S.Ct. at 1723 ("we emphasize that [defense counsel's race-neutral] explanation need not rise to the level justifying exercise of a challenge for cause.").

■■■ The record shows that the trial court sustained respondent's *McCollum* challenge here in part because it determined that Norman's claim of fairness was more credible and more persuasive than appellant's race-neutral reasons for striking Norman. We believe that this analysis was flawed. In ruling on a challenge for cause, where the striking party's burden is to demonstrate that the prospective juror cannot be impartial, the trial court may assess the credibility of a "prospective juror's protestation of impartiality." *State v. Logan*, 535 N.W.2d 320, 323 (Minn.1995). But in ruling on a peremptory strike, the validity or credibility of the juror's claims of fairness should not enter into the deter-

mination of pretext or intentional discrimination. The defendant exercising a peremptory strike should not be required to demonstrate that the juror sought to be struck cannot be fair.

■■■ The trial court, therefore, improperly shifted the burden of proof to appellant by insisting that appellant give a good reason why Norman could not be impartial. *See Purkett*, 514 U.S. at 768, 115 S.Ct. at 1771 (stating that the ultimate burden remains with the party opposing the strike). After appellant articulated a race-neutral reason for striking Norman, the trial court rejected the reason, and the strike, on the grounds that Norman's reasons were not persuasive evidence of Norman's partiality. In so doing, the trial court

> erred by combining *Batson's* second and third steps into one, requiring that the justification tendered at the second step be not just neutral but also at least minimally persuasive, *i.e.*, a plausible basis for believing that [Norman's] ability to perform * * * her duties as a juror will be affected.

*Id.* at 768, 115 S.Ct. at 1771 (quotation omitted). The trial transcript shows that the trial court's finding of pretext was based on appellant's inability to persuasively show that Norman would be partial to police testimony.

■■■ Thus, the trial court applied the wrong standard to the ultimate issue of whether respondent had proven intentional discrimination. In *Spears*, we concluded that the state met its burden of showing intentional discrimination by showing (1) that the venireperson and the alleged victim were of the same race; (2) that the defendant had previously been convicted of assault against a person of the venireperson's gender and race; and (3) the venireperson was the only member of her race on the jury panel. *Spears*, 560 N.W.2d at

726. None of these circumstances were true here. And while the Spears factors are not an exhaustive list of evidence that respondent can use to show discriminatory intent, we note that respondent offered no similarly compelling evidence of discrimination. Here, respondent argued only that Norman and the alleged victim are both minorities; that Norman was one of a number of minority members of the jury panel; and that Norman's police exposure "hasn't affected her ability to be fair." We cannot conclude, on the record before us, that respondent carried its burden of proving purposeful discrimination.

We realize the difficulty trial court judges face in creating a record that unequivocally shows that they separately considered each step of the three-part analysis. However, it is absolutely clear that the burden of persuading the trial court that a strike is racially motivated rests with, and never shifts from, the opponent of the strike. By requiring judges to consider each of the three parts of the *Batson* analysis separately, we safeguard against the burden of persuasion being improperly shifted to the strike's proponent. The trial court here rejected a valid race-neutral reason and did not require the opponent of the strike to meet its burden. We, therefore, hold that the trial court's finding of pretext is clearly erroneous, and must be reversed.

## II.

We turn next to the question of whether an erroneous deprivation of the right of peremptory challenge under Minn. R. Crim. P. 26.02, subd. 6, entitles appellant to a new trial automatically or whether the error is subject to a harmless error analy-sis. We note that this is an issue of first impression in Minnesota.

The right of peremptory challenge is "essential * * * to the impartiality of the trial," *Lewis,* 146 U.S. at 378, 13 S.Ct. at 139 (quotation omitted), and "is a necessary part of trial by jury." *Swain,* 380 U.S. at 219, 85 S.Ct. at 835; *see also Holland v. Illinois,* 493 U.S. 474, 482, 110 S.Ct. 803, 808, 107 L.Ed.2d 905 (1990) (stating that the Sixth Amendment "requirement of an 'impartial jury' impliedly *compels* peremptory challenges").

The right to challenge a given number of jurors without showing cause is one of the most important of the rights secured to the accused. * * * Any system for the impaneling of a jury that prevents or embarrasses the full, unrestricted exercise by the accused of that right must be condemned * * *.

*Pointer v. U.S.,* 151 U.S. 396, 408, 14 S.Ct. 410, 414, 38 L.Ed. 208 (1894).

The Supreme Court has long held that "[t]he denial or impairment of the right [of peremptory challenge] is reversible error without a showing of prejudice." *Swain,* 380 U.S. at 219, 85 S.Ct. at 835 (citations omitted),[1] *see also Harrison v. United States,* 163 U.S. 140, 141-42, 16 S.Ct. 961, 961, 41 L.Ed. 104 (1896) (district court's deprivation of defendant's peremptory challenges is reversible error); *Lewis,* 146 U.S. 370, 376, 13 S.Ct. 136, 138, 36 L.Ed. 1011 (1892) (same).

Every United States Court of Appeals to address this issue agrees that the erroneous deprivation of a defendant's right to peremptory challenge requires automatic reversal without a requirement of a showing of prejudice. *See, e.g., United State v. Gibbs,* 182 F.3d 408, 435 (6th Cir.1999)

---

**1.** Although *Batson* reversed parts of *Swain, Batson* never addressed this issue. For that reason, *Batson* left intact that portion of *Swain* that set forth the remedial rule for such errors.

(denial of right to peremptory challenge "amounts to reversible error, there is no requirement of a showing of prejudice" (citation omitted)); *United States v. Annigoni*, 96 F.3d 1132, 1141 (9th Cir.1996) (declining to adopt a harmless-error standard for the erroneous deprivation of the right to peremptory challenge); *United States v. Broussard*, 987 F.2d 215, 221 (5th Cir.1993) ("The denial or impairment of the right to exercise peremptory challenges is reversible error without a showing of prejudice."), *abrogated on other grounds by J.E.B. v. Alabama*, 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994); *Olympia Hotels Corp. v. Johnson Wax Dev. Corp.*, 908 F.2d 1363, 1369 (7th Cir. 1990) ("It is reversible error to deny a party to a jury trial the peremptory challenges to which the rules of procedure entitle him * * *."); *United States v. Ruuska*, 883 F.2d 262, 268 n. 4 (3d Cir.1989) (affirming the automatic reversal rule described in *Swain*, and stating that *Batson* "does not call into question this aspect of Swain"); *United States v. Ricks*, 802 F.2d 731, 734 (4th Cir.1986) (en banc) (denial of peremptory challenge reversible error even in absence of prejudice); *Carr v. Watts*, 597 F.2d 830, 833 (2d Cir.1979) (impairment of right of peremptory challenge is "reversible error without a showing of prejudice" (quoting *Swain*, 380 U.S. at 219, 85 S.Ct. at 835)).

The Minnesota Supreme Court has held that

> if the members of a petit jury are selected on improper criteria or if a biased juror is improperly allowed to sit in judgment of a criminal defendant and the issue is properly raised and preserved, the error has undermined the basic "structural integrity of the criminal tribunal itself, and is not amenable to harmless-error review."

*Logan*, 535 N.W.2d at 324 (quoting *Vasquez v. Hillery*, 474 U.S. 254, 263-64, 106 S.Ct. 617, 623, 88 L.Ed.2d 598 (1986)).

 In *Logan*, the supreme court ordered a new trial when the district court erroneously denied the defendant's right to exercise a challenge for cause. *Id.* at 324. We believe that *Logan*'s reasoning should be extended to peremptory challenges, and now hold that the erroneous denial of a defendant's peremptory challenge automatically entitles the defendant to a new trial, without a showing of prejudice.

A new trial is necessary to protect appellant's right to a fair trial. We note that this case's relatively unusual procedural posture, involving a challenge to a defendant's peremptory strike, distinguishes it from cases in which the prosecution strikes a prospective juror and the trial court overrules the defendant's *Batson* challenge. There, it is impossible to know what verdict the jury might have returned, had the juror been seated, and a harmless-error analysis might be appropriate. But where, as here, the trial court erroneously places a juror on the jury over the objection of the defendant, and the juror participates in a guilty verdict, the error is presumptively substantial and prejudicial, and we see no appropriate remedy other that to grant appellant a new trial.

## DECISION

The trial court committed reversible error by sustaining respondent's *McCollum* challenge to appellant's peremptory strike. We, therefore, reverse appellant's first-degree assault conviction and order that appellant be granted a new trial.

**Reversed and remanded.**