2002 ME 171

**STATE of Maine**

v.

**David E. McLEAN.**

Supreme Judicial Court of Maine.

Argued: Sept. 9, 2002.

Decided: Dec. 4, 2002.

David W. Crook, District Attorney, Alan P. Kelley, Deputy Dist. Atty., James A. Mitchell, Asst. Dist. Atty. (orally), Augusta, for State.

Ronald W. Bourget, Bourget & Bourget, P.A., Augusta, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

CLIFFORD, J.

[¶ 1] David E. McLean appeals from a judgment of conviction entered in Superior Court (Kennebec County, *Marden, J.*) following a jury verdict finding him guilty of aggravated operating under the influence (Class C), 29–A M.R.S.A. § 2411(6) (Supp. 2001).[1]  McLean contends that the trial

---

1. Title 29–A M.R.S.A. § 2411(6) provides as follows:

    **Aggravated Punishment Category.**  An operator commits a Class C offense if the State pleads and proves that the operator, while operating a motor vehicle in violation of this section:

    A.  In fact caused serious bodily injury as defined in Title 17–A, section 2, subsection 23 to another person or in fact caused the death of another person. . . .

    . . . .

    In any prosecution under this subsection, the State need not prove that the defendant's condition of being under the influence of intoxicants or having a blood alcohol level of 0.08% or more caused the serious bodily injury or death alleged. The State must prove only that the defendant's operation caused the serious bodily injury or death.  The court shall apply the definition of causation in Title 17–A, section 33.

    The sentence must include a period of incarceration of not less than 6 months, a fine of not less than $ 2,000 and a court-ordered suspension of a driver's license for a period of 6 years.  These penalties may not be suspended.

court acted beyond its discretion and erred when it denied him the right to exercise a peremptory challenge during the seating of an alternate juror. McLean also contends that the court did not properly instruct the jury on concurrent causation as to the requirement of causing serious bodily injury under 29–A M.R.S.A. § 2411(6). Although his concurrent causation contention is without merit, we agree with McLean that the denial of his peremptory challenge requires that we vacate his conviction.

[¶ 2] The evidence establishes that on April 18, 1999, McLean and a friend of his, Alfred Speck, had been drinking for several hours at a bar in Augusta. After the bar closed, the two got onto McLean's motorcycle and headed toward Gardiner, with McLean driving. McLean was operating his motorcycle while under the influence of alcohol; he had a blood-alcohol content level of more than 0.22%. Less than one mile from the bar, McLean veered off the paved part of the highway onto the soft shoulder of the road and lost control of his motorcycle. Both men were injured and had to be hospitalized. Neither McLean nor his passenger wore a protective helmet. Speck suffered a concussion, facial lacerations, and broken bones in his face.

[¶ 3] McLean was indicted on two counts of aggravated operating under the influence. The first count, based on prior convictions, was ultimately dismissed, but the second count, based upon the causation of serious bodily injury, went to trial.

[¶ 4] Jury selection took place on June 18, 2001.[2] After the State and McLean finished exercising their challenges for cause, only twenty-nine potential jurors remained in the jury pool. The twelve person regular jury panel was selected from the jury pool with both the State and McLean exercising eight peremptory challenges from the first twenty-eight names called. *See* M.R.Crim. P. 24(c)(3). The court indicated that the only juror remaining in the jury pool would be the alternate juror. Over McLean's objection, the trial court did not allow either the State or McLean to exercise a peremptory challenge to the alternate juror.[3]

[¶ 5] Prior to the commencement of the trial, McLean filed a written objection to the jury selection process, arguing that the trial should not go forward because he was denied the opportunity to exercise a peremptory challenge to alternate jurors as provided by M.R.Crim. P. 24(d). At a hearing on the motion, the State conceded that if the court wanted to seat an alternate juror then Rule 24(d) entitled McLean to a peremptory challenge, and that denying McLean his right to exercise a peremptory challenge violated Rule 24(d). The State suggested as a solution that the court forego seating an alternate juror and proceed with only twelve jurors. The court deferred ruling on McLean's objection.

[¶ 6] The trial commenced on June 26, 2001. The one alternate juror participated in the deliberations and the verdict, because one of the original twelve jurors selected on the twelve person regular jury panel was unable to serve. McLean renewed his objection to the alternate's participation. When the trial court asked McLean's counsel what prejudice McLean

---

**2.** The trial court selected multiple jury panels from the jury pool on the same day.

**3.** Title 14 M.R.S.A. § 1208 (1980) sets out a procedure that may be used to secure additional jurors when "a sufficient number of jurors duly drawn and summoned cannot be obtained for the trial of a cause . . . ." *See* ALEXANDER, MAINE JURY INSTRUCTION MANUAL § 2–13 (4th ed. 2001).

had suffered from not being able to exercise his peremptory challenge, McLean's counsel was unable to articulate any specific prejudice, only general prejudice. The alternate juror had not responded affirmatively to any of the *voir dire* questions that were asked of the entire panel. The trial court denied McLean's motion for a mistrial.

[¶ 7] At the end of the trial, McLean requested that the court instruct the jury on concurrent causation using the model instruction in ALEXANDER, MAINE JURY INSTRUCTION MANUAL § 6–50 (4th ed. 2001), contending that the State's expert testimony of Dr. Thomas Doolittle that Speck "probably would have avoided all of [his] injuries" if he had been wearing a full-face helmet raised the issue as to whether the failure of Speck to wear a helmet was a concurrent cause of his injuries.[4] The trial court denied McLean's request and instead instructed the jury pursuant to 17–A M.R.S.A. § 33 (1983).[5] The trial court also refused to allow McLean to argue to the jury that Speck's failure to wear a helmet was a concurrent cause of his injuries. After the instructions were given, McLean did not renew his request for his proposed instruction, nor did he object to the instruction as given.

[¶ 8] The jury returned a verdict of guilty. McLean was sentenced to five years in prison, with all but one year suspended, and four years of probation. He was also ordered to pay a $5000 fine and his driver's license was suspended for six years. McLean's appeal followed.

I.

[¶ 9] McLean argues that the trial court's denial of his right to exercise a peremptory challenge among alternate jurors as provided for in Rule 24(d) so taints the trial process that his conviction must be vacated. The State contends that, although the trial court clearly erred, the error is harmless because McLean cannot demonstrate that he suffered any actual prejudice and the evidence of McLean's guilt is overwhelming.

[¶ 10] Peremptory challenges are a creature of state law. *Ross v. Oklahoma*, 487 U.S. 81, 89, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988). States determine the number of peremptory challenges allowed, and define their purpose and the manner of their exercise. *Id.* Although there is no *constitutional* right to a peremptory challenge, *State v. Thomas*, 432 A.2d 757, 760 (Me.1981), the challenge, nonetheless, is *"one of the most important of the rights secured to the accused,"* Pointer v. United States, 151 U.S. 396, 408, 14 S.Ct. 410, 38 L.Ed. 208 (1894) (emphasis added).

[¶ 11] The Supreme Judicial Court determines by rule the number of peremptory challenges to which a party is entitled and the manner in which they are to be

**4.** McLean's proposed instruction was as follows:

When the defendant's conduct may have operated in conjunction with other actions, events or conditions to cause a particular result, then, to find the defendant guilty of the result, the State must prove beyond a reasonable doubt that (1) the result would not have occurred but for the defendant's conduct, and (2) the concurrent cause was not alone clearly sufficient to produce the result and (3) the defendant's conduct was not clearly insufficient to produce the result.

**5.** Title 17–A M.R.S.A. § 33 provides:

Unless otherwise provided, when causing a result is an element of a crime, causation may be found where the result would not have occurred but for the conduct of the defendant operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the defendant was clearly insufficient.

exercised, *see* 15 M.R.S.A. § 1258 (1980),[6] and has promulgated a rule to govern peremptory challenges to alternate jurors:

> **Alternate Jurors.** The court may direct that not more than four jurors in addition to the regular panel be called and impaneled to sit as alternate jurors as provided by law. The manner and order of exercising peremptory challenges to alternate jurors shall be the same as provided for peremptory challenges of regular jurors. *In all criminal prosecutions, each side shall be entitled to one peremptory challenge of the alternate jurors. . . .*

M.R.Crim. P. 24(d) (emphasis added). Peremptory challenges allow "the parties the option, within limits, of striking from the jury prospective jurors whom the parties consider to be potentially hostile or unsympathetic to their cause. Such challenges are justified as adding an extra measure of assurance that a particular jury will be fair and impartial." 1 CLUCHEY AND SEITZINGER, MAINE CRIMINAL PRACTICE § 24.4 at V–57 (1995); *see also United States v. Martinez–Salazar*, 528 U.S. 304, 316, 120 S.Ct. 774, 145 L.Ed.2d 792 (2000) (peremptory challenges are "one state-created means to the constitutional end of an impartial jury and a fair trial") (quoting *Georgia v. McCollum*, 505 U.S. 42, 57, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992)); *State v. Vreen*, 99 Wash.App. 662, 994 P.2d 905, 909 (2000) ("It is the interplay of challenges for cause and peremptory challenges that assures the fair and impartial jury.").

[¶ 12] We have not had the occasion to decide whether the denial of the right to a peremptory challenge is susceptible to harmless error analysis under M.R. Crim P. 52, which provides that "[a]ny error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." [7]

**6.** Section 1258 provides as follows:

> When a person charged with a criminal offense, who has not waived his right to trial by jury, is put upon his trial, the clerk, under the direction of the court, shall place the names of all the traverse jurors summoned and in attendance in a box upon separate tickets, and the names, after being mixed, shall be drawn from the box by the clerk, one at a time. The Supreme Judicial Court shall by rule provide the manner of exercising all challenges, and the number and order of preemptory challenges.

> Whenever by reason of the prospective length of a criminal trial the court in its discretion shall deem it advisable, it may direct that jurors in addition to the regular panel be called and impaneled to sit as alternate jurors. Such alternate jurors in the order in which they are called shall replace jurors who, prior to the time the jury retires to consider its verdict, become unable or disqualified to perform their duties. Such alternate jurors shall be drawn in the same manner, shall have the same qualifications, shall be subject to the same examination and challenges, shall take the same oath and shall have the same functions, powers, facilities and privileges and be subject to the same obligations and penalties as jurors on the regular panel. An alternate juror who does not replace a juror on the regular panel shall be discharged when the jury retires to consider its verdict. The Supreme Judicial Court shall by rule provide the number of alternate jurors, the manner of exercising all challenges to alternate jurors, and the order and number of peremptory challenges to alternate jurors.

> 15 M.R.S.A. § 1258.

**7.** In *State v. Houston*, 534 A.2d 1293, 1296 (Me.1987), we applied an obvious error standard of review to a claim that the trial court erred in the process of selecting an alternate juror, and concluded that the error was not obvious. M.R.Crim. P. 24(d) provides that jurors called and impaneled to sit as alternate jurors are "in addition to the regular panel." *See also* 15 M.R.S.A. § 1258 (similarly describing alternate jurors). In *Houston*, contrary to the provisions of Rule 24(d), the trial court did not designate which of the remaining thirteen jurors was the alternate, and announced that it was "not necessarily going to

[¶ 13] "The denial of the right of peremptory challenge is the denial of a substantial right," *Wright v. Bernstein*, 23 N.J. 284, 129 A.2d 19, 25 (1957). Most federal courts have held that the denial or impairment of the statutory right to exercise peremptory challenges under the federal rules is reversible error without a showing of prejudice. *See, e.g., Swain v. Alabama*, 380 U.S. 202, 219, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965) ("the denial or impairment of the right [to exercise peremptory challenges] is reversible error without a showing of prejudice") *overruled on other grounds by Batson v. Kentucky*, 476 U.S. 79, 89, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); *United States v. Gibbs*, 182 F.3d 408, 435 (6th Cir.1999) (denial of right to peremptory challenge "amounts to reversible error, there is no requirement of a showing of prejudice"); *Kirk v. Raymark Indus., Inc.*, 61 F.3d 147, 160–61 (3d Cir. 1995) (the right to peremptory challenge is statutory, rather than a constitutional privilege, and the impairment of that right is reversible per se); *Olympia Hotels Corp. v. Johnson Wax Dev. Corp.*, 908 F.2d 1363, 1369 (7th Cir.1990) ("It is reversible error to deny a party to a jury trial the peremptory challenges to which the rules of procedure entitle him ...."); *United States v. Ricks*, 802 F.2d 731, 734 (4th Cir.1986) (en banc) (denial of peremptory challenge constitutes reversible error even in absence of prejudice); *Carr v. Watts*, 597 F.2d 830, 833 (2d Cir.1979) (impairment of right of peremptory challenge is "reversible error without a showing of prejudice") (quoting *Swain*, 380 U.S. at 219, 85 S.Ct. 824).

[¶ 14] The federal rule is consistent with that of a clear majority of state courts as well. A majority hold that the impairment of the right to a peremptory challenge under state law constitutes reversible error per se.[8]

[¶ 15] The per se rule for the impairment of the peremptory challenge has had a long history and tradition under the common law, *Kirk*, 61 F.3d at 158, and such an error undermines "the basic structural integrity of the criminal tribunal itself ... and is not amenable to harmless-error review," *State v. Reiners*, 644 N.W.2d 118, 127 (Minn.Ct.App.2002) (internal quotations omitted). *See also* ROGER J. TRAYNOR, THE RIDDLE OF THE HARMLESS

---

pick the alternate from the last three [names remaining on the list]." 534 A.2d at 1295. Houston made no objection to the jury selection process used and was not able to demonstrate how he was prejudiced. We concluded that in those circumstances the court's action in not choosing the alternate juror pursuant to Rule 24 was not obvious error. *Id.* at 1295–96.

*Houston*, however, is distinguishable because the defendant in that case made no objection to the procedure used and did exercise his peremptory challenge to the alternate juror. In this case, McLean was not allowed to peremptorily challenge the alternate juror, and he properly preserved his objection.

**8.** *See State v. Huerta*, 175 Ariz. 262, 855 P.2d 776, 779–81 (1993); *People v. Armendariz*, 37 Cal.3d 573, 209 Cal.Rptr. 664, 693 P.2d 243, 249 (1984); *Hagerman v. State*, 613 So.2d 552, 553–54 (Fla.Dist.Ct.App.1993); *State v. Kauhi*, 86 Hawai'i 195, 948 P.2d 1036, 1039 (1997); *People v. Robinson*, 121 Ill.App.3d 1003, 77 Ill.Dec. 336, 460 N.E.2d 392, 398 (1984); *Walter v. State*, 208 Ind. 231, 195 N.E. 268, 271 (1935); *Spencer v. State*, 20 Md.App. 201, 314 A.2d 727, 732 (Ct. Spec.App.1974); *Commonwealth v. Green*, 420 Mass. 771, 652 N.E.2d 572, 576 (1995); *People v. Juarez*, 158 Mich.App. 66, 404 N.W.2d 222, 224–25 (1987); *State v. Reiners*, 644 N.W.2d 118, 126–27 (Minn.Ct.App.2002); *Wright v. Bernstein*, 23 N.J. 284, 129 A.2d 19, 25 (1957); *Fuson v. State*, 105 N.M. 632, 735 P.2d 1138, 1140 (1987); *City of Dickinson v. Lindstrom*, 575 N.W.2d 440, 444 (N.D.1998); *Baker v. English*, 324 Or. 585, 932 P.2d 57, 60 n. 6 (1997); *Commonwealth v. Ingber*, 516 Pa. 2, 531 A.2d 1101, 1105 (1987); *State v. Santelli*, 159 Vt. 442, 621 A.2d 222, 224–25 (1992); *Wardell v. McMillan*, 844 P.2d 1052, 1059 (Wyo.1992).

ERROR 64–66 (1970) (a defendant challenging the denial of the right to peremptory challenges could not possibly show prejudice, and the appellant "should not be called upon to do the impossible at the appellate stage"). The Court of Appeals of Washington rejected the harmless error review standard of review and explained as follows:

> How can an appellate court determine the degree of harm resulting from the participation of any particular juror in the jury's deliberations? There is no record of jury deliberations. Whether you place the burden upon the State (the peremptory challenge error did not affect the jury verdict) or upon the defendant (the defendant was prejudiced by the presence of a particular juror on the jury), the bearer of the burden of persuasion would likely fail.

*Vreen*, 994 P.2d at 910. The Supreme Court of Vermont has held that a party is not required to show actual prejudice because:

> If [this Court] were to accept the actual prejudice rule, the trial court's errors would become unreviewable because the focus of the appellate inquiry would not be on the court's error, but on the qualifications of the juror subject to the lost peremptory challenge. The whole purpose of peremptory challenges is to allow each party an opportunity to dismiss a fixed number of jurors without cause or explanation. The faulty denial of that opportunity creates prejudice that should need no elucidation.

*Westcom v. Meunier*, 164 Vt. 536, 674 A.2d 1267, 1269 (1996) (internal quotations omitted).

[¶ 16] In any case when a defendant's right to have jurors selected in the manner prescribed by the Rules is impaired, as it was in this case, it would be virtually impossible for the State to show after conviction that the injury to the defendant is harmless, and equally difficult for the defendant to demonstrate prejudice. The trial court's failure to allow McLean to exercise a peremptory challenge for alternate jurors pursuant to Rule 24(d), an error properly objected to by McLean, and one that affected the composition of the jury actually called upon to deliberate the case, requires us to vacate McLean's conviction.

## II.

[¶ 17] Although we vacate McLean's conviction, we address McLean's second issue on appeal because of the likelihood that it will appear at retrial. *See State v. Almurshidy*, 1999 ME 97, ¶ 21, 732 A.2d 280, 286. McLean contends that the trial court incorrectly refused to instruct the jury that Speck's failure to wear a helmet could be an independent and concurrent cause of Speck's injuries. We disagree. We have said:

> On appellate review, a party can demonstrate entitlement to a requested instruction only where the instruction was requested and not given by the court and it: (1) states the law correctly; (2) is generated by the evidence in the case; (3) is not misleading or confusing; and (4) is not otherwise sufficiently covered in the court's instructions.

*Clewley v. Whitney*, 2002 ME 61, ¶ 8, 794 A.2d 87, 90.

[¶ 18] Title 29–A M.R.S.A. § 2411(6) (Supp.2001) provides that "[i]n any prosecution under this subsection ... [t]he State must prove only that the defendant's operation caused the serious bodily injury or death. The court shall apply the definition of causation in Title 17–A, section 33." In instructing the jury, the trial court closely followed the language of section thirty-three. Moreover, the instruction

given is very similar in substance to the instruction requested by McLean. *See Clewley,* 2002 ME 61, ¶ 8, 794 A.2d at 90.

[¶ 19] Nor did the trial court err in prohibiting McLean from arguing to the jury that the absence of a helmet was a concurrent cause of Speck's injuries. Such an argument would have only confused the issue of causation for the jury. Alone, the absence of a helmet could not possibly cause the injuries suffered by Speck. *See* 17–A M.R.S.A. § 33. A serious injury may be prevented by the presence of a helmet, but the lack of a helmet, absent unusual circumstances, cannot be the *cause* of the injury. A motorcycle crash at a high rate of speed that occurs when the operator is impaired by alcohol clearly is sufficient to cause serious bodily injury, regardless of whether a helmet may have acted to prevent or to lessen the extent of the injuries. The victim's failure to wear a helmet was not a concurrent cause that could relieve the defendant of his criminal responsibility because without the occurrence of the motorcycle crash, Speck would not have been injured. *See* 17–A M.R.S.A. § 33.

The entry is:

Judgment of conviction vacated. Remanded to the Superior Court for further proceedings consistent with this opinion.