STATE of Minnesota, Petitioner, Appellant,

v.

Cecil John REINERS, Respondent.

No. C7–01–1001.

Supreme Court of Minnesota.

July 10, 2003.

Mike Hatch, Minnesota Attorney General, St. Paul, MN, and Amy Klobuchar, Hennepin County Attorney, Jean E. Bur-

dorf, Assistant County Attorney, Minneapolis, MN, for State of Minnesota.

Robert D. Sicoli, Sarah M. Aho, Thompson, Sicoli & Aho, Ltd., Minneapolis, MN, for Cecil John Reiners.

## OPINION

HANSON, Justice.

Following a jury trial, respondent Cecil John Reiners was found guilty of assault in the first degree for striking Jose Padilla in the head with a wooden board. The court of appeals reversed the conviction, concluding that the trial court committed reversible error by denying Reiners' peremptory challenge of an African–American prospective juror and, as a result of that error, Reiners was entitled to a new trial. We affirm the decision of the court of appeals.

Reiners owns Bloomington Steel and Supply, a company that fabricates support structures used in the construction of buildings. Reiners subleased a portion of the Bloomington Steel work area to another company, Keystar. Before this incident, Reiners had discouraged his employees from speaking Spanish in the work area because he believed that specific instructions pertaining to the operation of machinery were not adequately translated from English to Spanish.

On October 18, 2000, Reiners noticed one of his employees, Jose Diaz, in the work area conversing in Spanish with a Keystar employee, Jose Padilla. Reiners told the two workers "We don't speak Spanish here" and ordered Diaz to return to his assigned work area. Reiners also told Padilla not to interact with the Bloomington Steel employees. Reiners left to eat lunch and returned to the work area around 12:30 P.M. He again encountered Diaz and Padilla sitting at a table with another Bloomington Steel employee. Reiners approached the table and told Padilla to leave the premises. According to Reiners, Padilla refused to leave and threw a piece of wood at Reiners, hitting him in the forehead. According to Diaz, after Padilla refused to leave, Reiners grabbed a wooden board and made a threatening gesture as if he planned to strike Padilla with it. Diaz also testified that Padilla raised his arms in a defensive position and stated: "Go ahead." Reiners struck Padilla with the board in the side of his head. Reiners then fled the scene and was eventually arrested by the police in western Minnesota two days later. As a result of the blow, Padilla sustained skull fractures and hematomas on both the left and right sides of his head. He spent one month in the hospital and, at the time of the trial, was undergoing therapy for memory loss. The state charged Reiners with assault in the first degree, a violation of Minn.Stat. § 609.221, subd. 1 (2002).

Reiners' case went to trial on March 26, 2001. The court did not use the jury-selection process suggested by Minn. R.Crim. P. 26.02, subd. 4(3)(a), whereby prospective jurors equal to the total number necessary for trial plus the number of peremptory challenges are drawn and peremptory challenges are exercised alternatively after both parties have examined all prospective jurors. Instead, the court used the process preferred for first-degree murder cases, under Minn. R.Crim. P. 26.02, subd. 4(3)(c), whereby one prospective juror is drawn at a time and peremptory challenges are made at the completion of the examination of each juror.

The second prospective juror examined by counsel was an African–American woman. Reiners' counsel questioned her first. She stated that her father had worked as a

police officer in Atlanta, Georgia for approximately nine years and that she saw him "about once every two years." She also stated that she had participated in police training at a police academy while she was in high school. Although she "loved" her exposure to police course work, she said that she did not pursue a law enforcement career because her family was concerned for her safety.

At the completion of the examination, Reiners' counsel exercised a peremptory challenge against this prospective juror. The state objected to the challenge based on *Georgia v. McCollum,* 505 U.S. 42, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992), and *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The district court excused the jury panel from the courtroom and asked Reiners' counsel to explain the reasons for his challenge. Counsel explained that his reason for excluding the prospective juror was her significant exposure to law enforcement. He said he planned to question the actions of the police and that allowing the prospective juror to sit on the jury would be tantamount to impaneling a police officer. The state argued that the prospective juror's exclusion was pretextual because she was an African American, she was one of only a few minorities in the entire panel, and the victim was Hispanic. After the state's response, the court stated:

> Well, I do think [Reiners' peremptory challenge is] a bit [pretextual] reasoned because you asked her—or she volunteered and gave you, in one of your open-ended questions, that she would not believe a person just because they were a police officer. I think that was a very telling answer that supports your side of the case more so than it does the State. Most of the answers, I thought, were more favorable to you than to the State. So I am going to deny the strike, keep her on.

The district court allowed Reiners' counsel to continue questioning the prospective juror after its ruling on the *Batson* challenge. The state then questioned her and accepted her as a juror. The jury ultimately found Reiners guilty of assault in the first degree and the trial court entered judgment of conviction. Reiners was sentenced to 91 months in prison.

Reiners appealed his conviction and argued that the district court erred by denying his peremptory challenge. The court of appeals concluded that the prospective juror's exposure to law enforcement through her father and through her brief training in high school was "a valid, race-neutral reason" for Reiners to exclude her. *State v. Reiners,* 644 N.W.2d 118, 124 (Minn.App.2002). It also concluded that the district court applied the wrong standard, which had the effect of improperly shifting the burden of proof on the issue of intentional discrimination from the state to Reiners. *Id.* at 125. The court of appeals reversed Reiners' conviction, holding that the district court committed reversible error by denying Reiners' peremptory challenge and that Reiners was automatically entitled to a new trial. *Id.* at 127. We granted the state's petition for review.

## I.

The state argues that the court of appeals erroneously discounted the district court's factual finding of pretext and that the district court's finding was not clearly erroneous. We have recognized that the existence of racial discrimination in the exercise of a peremptory challenge is a factual determination that is to be made by the district court and should be given great deference on review. *State v. Taylor,* 650 N.W.2d 190, 200–01 (Minn. 2002). Accordingly, we have said that the district court's factual determination will

not be reversed unless it is clearly erroneous. *Id.* at 201 (citing *State v. James,* 520 N.W.2d 399, 403–04 (Minn.1994)).

■ Under *Batson,* the state's exercise of a peremptory challenge against a potential juror on the basis of race is a denial of equal protection for two reasons. First, racial discrimination in the selection of a jury violates the defendant's "right to be tried by a jury whose members are selected pursuant to nondiscriminatory criteria" and "puts him on trial before a jury from which members of his race have been purposefully excluded." *Batson,* 476 U.S. at 85–86, 106 S.Ct. 1712 (citing *Strauder v. West Virginia,* 100 U.S. 303, 25 L.Ed. 664 (1879)). Second, racial discrimination in the selection of a jury violates the prospective juror's right to participate in jury service. *Id.* at 87, 106 S.Ct. 1712. In *McCollum,* the United States Supreme Court relied upon the second reason to extend its holding in *Batson* to peremptory challenges made by criminal defendants. *McCollum,* 505 U.S. at 59, 112 S.Ct. 2348. Thus, the state clearly has standing to make a *Batson* objection to a defendant's peremptory challenge.

■ In *Batson,* the Supreme Court established a three-step process to determine whether a peremptory challenge discriminates on the basis of race. 476 U.S. at 96–98, 106 S.Ct. 1712. The Court has summarized the *Batson* analysis as follows:

> [O]nce the opponent of a peremptory challenge has made out a prima facie case of racial discrimination (step one), the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation (step two). If a race-neutral explanation is

tendered, the trial court must then decide (step three) whether the opponent of the strike has proved purposeful racial discrimination.

*Purkett v. Elem,* 514 U.S. 765, 767, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995) (citing *Hernandez v. New York,* 500 U.S. 352, 358–59, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991)).

■ The record suggests that the district court essentially began its *Batson* analysis at step two. The court of appeals ruled that the issue of whether the state established a prima facie case of discrimination was therefore moot. *Reiners,* 644 N.W.2d at 124; *see also State v. Scott,* 493 N.W.2d 546, 548 (Minn.1992). Because Reiners did not seek review of that ruling, we will not consider the adequacy of the state's prima facie case for purposes of this appeal. We note, however, that the use of a peremptory challenge to remove a member of a racial minority does not necessarily establish a prima facie case of discrimination. For example, we have held that the state's use of a peremptory challenge to remove the only prospective African-American juror did not violate *Batson.* *State v. Everett,* 472 N.W.2d 864, 868–69 (Minn.1991). We said that a prima facie case is established by showing (1) that a member of a racial minority has been peremptorily excluded *and* (2) that "circumstances of the case raise an inference that the exclusion was based on race." *Id.* at 868. We declined to determine whether a prima facie case had been made because the state's race-neutral explanation for the strike, that the juror was under age 25, was sufficient to defeat the *Batson* objection where the state peremptorily challenged all jurors under age 25.[1] *Everett,* 472 N.W.2d at 869.

---

1. *See also State v. Bowers,* 482 N.W.2d 774, 776–77 (Minn.1992) (holding that the defendant failed to establish a prima facie case of discrimination where the only African-American prospective juror was removed for cause, the juror admitted to some bias but said she

Under step two of the *Batson* analysis, Reiners was only required to proffer a race-neutral reason for his peremptory challenge. The reason did not have to be "persuasive, or even plausible." *Purkett,* 514 U.S. at 767–68, 115 S.Ct. 1769. Reiners' counsel stated that he chose to exclude the prospective juror because of her significant exposure to law enforcement. We have consistently held that a family member's involvement with the legal system is a legitimate race-neutral reason for the state to exercise a peremptory challenge. *See State v. Martin,* 614 N.W.2d 214, 222 (Minn.2000); *State v. Greenleaf,* 591 N.W.2d 488, 501 (Minn.1999); *Scott,* 493 N.W.2d at 549. We view the involvement of a prospective juror or a close family member in law enforcement to be an equally race-neutral reason for a defendant to exercise a peremptory challenge. We conclude, therefore, that Reiners articulated a valid race-neutral reason for his peremptory challenge.

The district court was then required to decide whether the state carried its burden of proving that Reiners' stated reason was pretextual and that the challenge was actually motivated by racial discrimination. We conclude that the court applied the wrong standard to that decision and, as a consequence, the court's factual determination did not support the conclusion of pretext and was clearly erroneous.

■ First, we observe that the district court should have more clearly demarcated the steps of its *Batson* analysis. It is important for the court to announce on the record its analysis of each of the three steps of the *Batson* analysis and, if it reaches step three, to state fully its factual

findings, including any credibility determinations. Here the court did not state any conclusion as to whether the state had made out a prima facie case of racial discrimination. As noted above, that conclusion is not dictated by the sole fact that the prospective juror was a member of a racial minority. And, although the court asked Reiners' counsel to explain his reasons for the peremptory challenge, presumably moving to the second step of the analysis, it is unclear whether the court required that explanation because a prima facie case had been shown. Further, it is unclear whether the court rejected Reiners' explanation as being insufficiently race-neutral or whether the court moved to the third step and evaluated Reiners' explanation in the context of the state's evidence of racial discrimination. The importance of clarity at each step of the analysis is that the opponent has the burden of proving a prima facie case, the proponent has the burden of production of a race-neutral explanation, and the opponent has the ultimate burden of proving pretext and discriminatory intent.

■ The lack of clarity in this record caused the court of appeals to assume that the district court had found that a prima facie case had been shown and to conclude that the court had combined the second and third steps in a way that improperly shifted the burden of proof to Reiners. *Reiners,* 644 N.W.2d at 125. We will take the analysis further. Even if we assume that the court moved to the third step and made a credibility evaluation of the state's claim of racial discrimination, we conclude that the court did not apply the correct standard to that evaluation. The court's

could be fair and the state questioned that juror more thoroughly than a white male juror). *But see State v. Moore,* 438 N.W.2d 101, 107 (Minn.1989) (holding that the state's peremptory challenge of the only African-Ameri-

can prospective juror in a panel of sixty established a prima facie case of discrimination but that the juror's prior arrest record rebutted the prima facie case and defeated the *Batson* objection).

task is to "determine if [the opponent of the peremptory challenge] has established purposeful discrimination." *Batson*, 476 U.S. at 98, 106 S.Ct. 1712. In so doing, it must consider all of the evidence and determine whether the opponent of the peremptory challenge has carried the burden of proving pretext and the existence of racial discrimination. *Taylor*, 650 N.W.2d at 202.

The district court concluded that Reiners' challenge was "a bit [pretextual]", but its explanation of that conclusion did not refer to the state's evidence of discrimination or pretext. Instead, the court's explanation referred to the credibility of the prospective juror's answers during voir dire on the question whether she could be fair to Reiners. The only fact determination that the court made was that the juror could be fair to Reiners. In this way, the court incorrectly used the criterion that is applicable to a challenge for cause for the analysis of a peremptory challenge. The court's determination that the prospective juror could be fair to Reiners was irrelevant to the *Batson* analysis.

 Peremptory challenges are designed to be used to excuse prospective jurors who can be fair but are otherwise unsatisfactory to the challenging party. A prospective juror who could not be fair would be subject to removal for cause. *See, e.g., State v. Bowers*, 482 N.W.2d 774, 776 (Minn.1992) (holding that juror's admitted biases provided a sufficient basis for removal for cause even though she was the only African American on the panel and she had ultimately said she could be fair). Peremptory challenges allow a party to strike a prospective juror that the

party believes will be less fair than some others and, by this process, to select as final jurors the persons they believe will be most fair. The district court's factual determination that the prospective juror could be fair does not support the court's conclusion that the peremptory challenge was the result of racial discrimination and that conclusion is clearly erroneous.

Further, even if we were to assume that the district court did not fully explain on the record the basis for its conclusion, and that it did in fact consider other evidence in the record, we would conclude that the evidence of pretext and discriminatory intent was insufficient to overcome Reiners' race-neutral reason for the peremptory strike.

First, the state was unable to show any pattern of using peremptory challenges to exclude racial minorities from the jury. Given the decision to draw one juror at a time, and that this was only the second juror drawn, the state could not show that Reiners questioned this prospective juror differently than others or that this peremptory strike would result in a disproportionate exclusion of minorities from the final panel.[2] Although the state suggests that Reiners' questions were superficial, the questions did sufficiently uncover the race-neutral information about the prospective juror's involvement with law enforcement. We have previously recognized that "the parties must have considerable latitude in their questioning of potential jurors and it would be unusual for this court to question a party's failure to address a line of questioning helpful to it." *Bowers*, 482 N.W.2d at 777. And, because this was only the second juror

2. The state argues that we should look to the entire record—including the questioning of and any challenges exercised against subsequent jurors. We disagree. At the time of the state's *Batson* challenge, the district court could only compare the challenged juror to the *previous* juror. The district court's decision to sustain the *Batson* challenge must be supported by the record that existed at that time. It was not.

questioned, the impact of the peremptory challenge on the ultimate make-up of the jury could not be determined. Reiners' counsel did state to the district court that there were two other racial minorities in the jury panel and that he rated them favorably based on their answers to the juror questionnaire.

Second, this case presents none of the indicia of pretext that were present in other cases where a finding of pretext has been sustained. For example, in *State v. McRae*, 494 N.W.2d 252, 254–57 (Minn. 1992), the state deviated from its normal pattern of questioning to ask an African–American prospective juror questions about the fairness of the jury system and then exaggerated the effect of the juror's answers, stating: "[S]he thought that basically, the system is unfair to minorities, and the defendant's being black is—and her being black she would overcompensate by basically letting this guy off." In *State v. McDonough*, 631 N.W.2d 373, 385–86 (Minn.2001), we concluded that the state's reason for a peremptory challenge was not race-neutral because the questions that the state relied upon as providing race-neutral reasons would have elicited the same response from any fair-minded person.

Finally, while the state essentially provided no evidence of pretext, the explanation offered by Reiners was a significant race-neutral reason. A juror's involvement in law enforcement provides a legitimate basis for a defendant's peremptory challenge. Where the proponent's explanation of a peremptory challenge is race-neutral, and there is no evidence from which to infer an intent to discriminate, the *Batson* objection must be overruled. *See, e.g., Bowers*, 482 N.W.2d at 777 (holding that "[t]hese facts raise no inference of racially discriminatory motive" where the state made a challenge for cause of an African–American prospective juror who had admitted bias); *Everett*, 472 N.W.2d at 869 (holding that the state's peremptory challenge of the only African–American prospective juror did not raise an inference of a racially discriminatory motive where the state explained that the juror was stricken because she was too young); *Moore*, 438 N.W.2d at 107 (holding state's peremptory challenge of the only African–American prospective juror, based on the juror's prior arrest record, was racially neutral).

We conclude that the district court's denial of Reiners' peremptory challenge was clearly erroneous.[3]

---

**3.** The dissenting opinions emphasize the need to give "great deference" to the district court's findings on pretext. Presumably, the use of the adjective "great" in our previous decisions was a style choice, for emphasis, and was not meant to establish a higher degree of deference than that applied to any other fact-finding function of the district court. The appropriate mechanism by which deference is applied to any fact finding of the district court is the clearly erroneous test. Deference, as measured by the clearly erroneous test, does not extend to fact findings that have no evidentiary support or legal conclusions that were arrived at by applying the incorrect legal standard. Otherwise, both the right of a party to make a peremptory strike and the right of the adverse party to make a

*Batson* objection would be subject to the whim of each district judge.

The 16 cases reviewed in the dissent of Justice Page can be compared another way. In 15 of them, the district court had permitted the *state* to strike a racial minority from the jury over the objection of a minority defendant, even where the state's race-neutral explanation was "not compelling." In this case, the district court refused to permit the *defendant* to strike a racial minority from the jury, even where the defendant's race-neutral explanation was significant and well recognized. It would be fundamentally unfair to apply a significantly more lenient *Batson* rule to the state's objections to the peremptory challenges of a defendant than the *Batson*

## II.

The state next argues that the district court's erroneous denial of a peremptory challenge does not automatically entitle Reiners to a new trial. We have previously discussed the appropriate remedy where a reviewing court determines that a party's peremptory challenge was pretextual. In *State v. Greenleaf*, we considered whether the district court erred in allowing the state to exercise peremptory challenges against two Native–American prospective jurors where a Native–American defendant stood accused of aiding and abetting first-degree murder. 591 N.W.2d at 500. Before reviewing the court's *Batson* analysis, we stated that the appropriate remedy, where a peremptory challenge is ultimately proven to be pretextual, is an automatic new trial:

> If a prosecutor had a prohibited discriminatory intent or motive for striking a juror, a defendant is automatically entitled to a new trial because harmless error impact analysis is inappropriate in the case of a defendant convicted by a petit jury if there was racial discrimination in the selection of that jury.

(Internal quotations omitted.) *Greenleaf*, 591 N.W.2d at 500–01 (quoting *McRae*, 494 N.W.2d at 260).

We have also considered the appropriate remedy where a district court's refusal to dismiss a prospective juror for cause was deemed erroneous on review. *See State v. Logan*, 535 N.W.2d 320 (Minn.1995). In *Logan*, we reversed and remanded the defendant's conviction, stating that "if the members of a petit jury are selected on improper criteria * * *, the error has undermined the basic 'structural integrity of the criminal tribunal itself, and is not amenable to harmless-error review.' " *Id.* at

324 (quoting *Vasquez v. Hillery*, 474 U.S. 254, 263–64, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986)).

█ We conclude that the erroneous denial of a peremptory challenge also does not lend itself to harmless error analysis. We would find it difficult, if not impossible, to compare an error made during voir dire to all of the evidence presented at trial and gauge its particular impact on the verdict. *See United States v. Annigoni*, 96 F.3d 1132, 1144 (9th Cir.1996). This difficulty stems from the reviewing court's inability to follow the challenged juror into jury deliberation to determine his or her effect, if any, on the resulting verdict. We also observe that nearly all of the federal courts of appeal hold that where a district court erroneously deprives a party of its right to exercise a preemptory challenge, the party is entitled to an automatic reversal without a showing of prejudice. *See Reiners*, 644 N.W.2d at 126–27.

█ For these reasons, we hold that the district court's erroneous denial of Reiners' peremptory challenge automatically entitles him to a new trial without a showing of prejudice.

Affirmed.

PAGE, Justice (dissenting).

I join in the dissent of Justice Russell A. Anderson. However, I write separately to highlight two specific concerns. I begin with the blind eye cast by the court on the defendant's disparate treatment of prospective juror number 2 (juror 2) even when, as dictated by the court, we examine this treatment solely with respect to prospective juror number 1 (juror 1). Juror 1 was presumably Caucasian[1] and had a

---

rule that is applied to a defendant's objections to the peremptory challenges of the state.

1. The record does not make clear the race of juror 1, but the parties' arguments imply that he is Caucasian. Reiners does not object or

nephew who was a Hennepin County Sheriff's Deputy. The nephew was working in the Hennepin County Government Center, where the trial was taking place, at the time of trial. Juror 1 indicated that he did not know much about what his nephew did because he did not see his nephew very often. When asked if the fact that his nephew was a law enforcement officer would affect his ability to be fair, he initially answered, "I don't have any thoughts on that, I guess," but later said that he would not give testimony from a police officer any greater weight than testimony from a layperson. The defense asked no further questions on this topic and passed on juror 1.

Juror 2 was African American. At the time of trial, her father, whom she saw approximately once every two years, was a police officer in Atlanta, Georgia. Juror 2 indicated that she had taken a few classes while in high school at some sort of police academy because she was considering becoming a police officer. When asked if her father's job would affect her decision-making process, juror 2 clearly stated, "I hear both sides. I'm not one to judge before I hear everything. Because my dad is a cop doesn't mean that I automatically have to, like, listen to everything [the police] say or believe everything that they say." On further questioning, she stated, "I think that people should not be convicted unless there is 100 percent. I need to see something that is solid in order to convict. I can't just, I mean—I don't know. I guess I would have to have solid proof." Defense counsel followed that answer with a question, "How strongly do you feel about that? Is that something that you agree with, but don't feel strongly about or is it something that you feel pretty strongly about?" The prospective juror answered,

"I agree strongly. Because I would [not] want to convict someone that's innocent."

The defense counsel moved to strike juror 2 because he feared "her law enforcement contact" would bias her against the defendant whose defense was based on the theory that the police had behaved improperly. In justifying the strike, the defense counsel stated that his concern was primarily based on the fact that juror 2 had some law enforcement training and in high school had considered becoming a police officer, rather than her father's occupation. The trial court found that this proffered reason was pretextual and denied the defendant's peremptory strike.

The court now reverses this determination because the trial court used the "wrong standard." Specifically, the court asserts that "[t]he district court's factual determination that the prospective juror could be fair does not support the court's conclusion that the peremptory challenge was the result of racial discrimination and that conclusion is clearly erroneous." In doing so, however, the court misinterprets the trial court's analysis.

As the United States Supreme Court explained in *Purkett v. Elem*, 514 U.S. 765, 768, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995), once a race-neutral reason has been given, "the trial court must * * * decide * * * whether the opponent of the strike has proved purposeful racial discrimination." While a lawyer may use a peremptory strike to eliminate those jurors who claim that they can be fair, but are otherwise undesirable, when the proffered justification is "implausible or fantastic," the trial court "may (and probably [will find those justifications]) to be pretexts for purposeful discrimination." *See id.*

In that instance the issue comes down to whether the trial court finds the [attor-

otherwise indicate that this characterization is incorrect.

ney's] race-neutral explanations to be credible. Credibility can be measured by, among other factors, the [attorney's] demeanor; by how reasonable, or how improbable, the explanations are; and by whether the proffered rationale has some basis in accepted trial strategy. *Miller–El v. Cockrell,* 537 U.S. 322, ——, 123 S.Ct. 1029, 1040, 154 L.Ed.2d 931 (2003); *see Hernandez v. New York,* 500 U.S. 352, 365, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991) (stating that "[i]n the typical peremptory challenge inquiry, the decisive question will be whether counsel's race-neutral explanation for a peremptory challenge should be believed. There will seldom be much evidence bearing on that issue, and the best evidence often will be the demeanor of the attorney who exercises the challenge"). The evaluation of the attorney's demeanor and credibility is an issue of fact to be decided by the trial court and awarded great deference by appellate courts, to be overruled only if found to be clearly erroneous. *See, e.g., State v. Martin,* 614 N.W.2d 214, 222 (2000); *Miller–El,* 537 U.S. at ——, 123 S.Ct. at 1041 (concluding that "[d]eference is necessary because a reviewing court, which analyzes only the transcripts from *voir dire,* is not as well positioned as the trial court is to make credibility determinations").

Because *Batson's* third prong is substantially based on the demeanor and credibility of the attorney seeking to use the peremptory strike, this court's focus on the trial court's use of the words "fair" in its analysis causes the court to ignore what was actually at issue. In concluding that the justification given by the defense lacked credibility and constituted pretext, the trial court specifically found that most of juror 2's answers were more favorable to the defense than the state. This was important because the defense's entire argument for striking juror 2 was that she would be biased against the defense. In essence, what the trial court found in this case was that the defense's justification was implausible and even fantastic based

on the juror's consistent statements that directly contradicted the defense's justification. Unlike an appellate court, which is looking at a cold record, the trial court has the juror and the attorney before it and is in the best position to determine credibility. Because this determination is granted "great deference," we are only to reverse *if the finding is clearly erroneous,* a scenario nonexistent in this case especially when juror 2's statements are compared to juror 1's statements.

Evidence of bias or fairness has consistently been a basis upon which this court has relied to determine whether a juror was stricken for race-neutral reasons. *See, e.g., State v. McRae,* 494 N.W.2d 252, 257–58 (Minn.1992) (reversing and remanding when "the record of the prosecutor's examination of the juror in question fails to support the explanation given by the prosecutor for striking the juror and suggests instead that the prosecutor's questioning was prompted by the juror's race and that the juror is a fair-minded reasonable person who was ready and willing to serve fairly, impartially, and with an open mind"). When there is evidence that the questions would elicit the same responses from any fair-minded person, then a strike of a minority based on his or her identical response can only lead to the conclusion that the strike was not race-neutral. *State v. McDonough,* 631 N.W.2d 373, 385 (Minn.2001); *Walton v. Caspari,* 916 F.2d 1352, 1362 (8th Cir.1990) (finding that pretext can be established by proving that "prosecutors use their peremptory challenges to exclude African–American venirepersons for a given reason or reasons, but then fail to apply the same reason or reasons to exclude similarly situated, white venirepersons"), *quoted in State v. Scott,* 493 N.W.2d 546, 549 (Minn.1992).

In *McDonough,* we concluded that the reason given for the strike of an African–American juror was race-neutral because, when asked the same questions as Cauca-

sian jurors, the African American admitted bias towards the defense and appeared to be influenced by factors not in evidence. 631 N.W.2d at 385–86. Here, we have nearly identical responses from two jurors with "law enforcement contact," but the defense passed on the Caucasian and struck the African American. Like the trial court, I can only conclude, based on their nearly identical answers, that the reason given for the strike of juror 2 was "fantastic" and therefore pretextual. Therefore, based on the "great deference" we give to trial courts and because there is no evidence that this determination was clearly erroneous, I would affirm the trial court.

It is this history of granting the trial court "great deference," coupled with today's decision, that highlights an extremely troublesome trend emerging from this court, one that evinces a hostility towards jurors of color. This court has considered 15 cases, including this one, in which we have resolved *Batson* issues applying our deferential standard. In each of these cases, except this one, the defendant challenged the strike. In every case we have either permitted or required the exclusion of the juror.

### NO DEFERENCE TO TRIAL COURT— STRIKE OF JUROR REVERSED

- *State v. Reiners,* 664 N.W.2d 826, 2003 WL 21545972 (2003) (no deference granted, determination of pretext reversed and juror excluded)
 Defendant: Caucasian
 Juror excluded: African American

### DEFERENCE TO TRIAL COURT— STRIKE OF JUROR AFFIRMED

- *State v. Moore,* 438 N.W.2d 101, 107 (Minn.1989) (concluding that the "great deference" awarded to the trial court's determination warranted a finding that the ruling was not clearly erroneous even though the prosecution listed off the juror's criminal background only after first discussing the juror's lack of education and employment as the primary reasons for the strike)
 Defendant: African American
 Juror excluded: African American

- *State v. Everett,* 472 N.W.2d 864, 869 (Minn.1991) (stating that "[w]ithout in any way endorsing the prosecutor's reasoning [striking because the juror was too young], we are satisfied that the trial court did not err in accepting the reason given by the prosecutor as sufficient to overcome any prima facie case of impermissible age-based discrimination")
 Defendant: African American
 Juror excluded: African American

- *State v. Scott,* 493 N.W.2d 546, 549 (Minn. 1992) (concluding that whether the prosecutor acts with discriminatory intent "is essentially a factual determination which the trial court makes")
 Defendant: Caucasian
 Juror excluded: African American

- *State v. Stewart,* 514 N.W.2d 559, 563–64 (Minn.1994) (inferring from the trial court's statement, "All right; the record is made" that the prosecution's proffered reasons for the peremptory strike were race-neutral and deferred to the trial court's determination that the strike was not racially motivated)

Defendant: Caucasian
Juror excluded: Native American

- *State v. James*, 520 N.W.2d 399, 404 (Minn.1994) (finding that, although the prosecutor's proffered reasons for the strike were not "compelling," because the trial court did not find the reasons based on pretext and because this decision is granted great deference, the decision was not clearly erroneous)
Defendant: African American
Juror excluded: African American

- *State v. Gaitan*, 536 N.W.2d 11, 16 (Minn. 1995) (concluding that "[g]iving, as we must, 'considerable deference' to the trial court's finding on the issue of intent and motivation[,] * * * the trial court's determination that there was no purposeful discrimination must be sustained")
Defendant: Mexican
Juror excluded: Mexican American

- *State v. Buggs*, 581 N.W.2d 329, 339 (Minn. 1998) (finding that "the trial court must determine whether there has been purposeful discrimination")
Defendant: African American
Juror excluded: Caucasian with African–American daughter

- *State v. DeVerney*, 592 N.W.2d 837, 844 (Minn.1999) (in noting that considerable deference was to be given to the trial court, we concluded that "[t]he trial court, taking into consideration all the relevant factors, properly determined that DeVerney failed to demonstrate that the prosecutor acted with discriminatory intent or purpose, and we therefore affirm the trial court's ruling")
Defendant: Native American
Juror excluded: Native American

- *State v. Greenleaf*, 591 N.W.2d 488, 501 (Minn.1999) (concluding that "[t]here is nothing in the record to indicate that such a finding was clearly erroneous since the reasons provided by the state for each excluded juror provided ample, nonrace based justifications for the peremptory strikes")

Defendant: Native American
Juror excluded: Native American

- *State v. Martin*, 614 N.W.2d 214, 223 (Minn.2000) (concluding that the trial court did not err in denying the defendant's Batson challenge and stating that, "[l]ooking to the entire record and with deference to the trial court's determination of the prosecutor's credibility, we hold that the finding that the prosecutor acted without discriminatory intent was not clearly erroneous")
Defendant: Native American
Juror excluded: African American

- *State v. Johnson*, 616 N.W.2d 720, 725–26 (Minn.2000) (recognizing that "[a]ppellate courts give considerable deference to the trial court's finding on the issue of the prosecutor's intent" and concluding that in denying the defendant's Batson challenge "the trial court did not abuse its discretion in finding the prosecutor's denial of discriminatory intent credible and in sustaining the challenge")
Defendant: African American
Juror excluded: African American

- *State v. Henderson*, 620 N.W.2d 688, 704 (Minn.2001) (concluding, "[b]ased on the record before this court, [that] the district court did not abuse its discretion because Henderson failed to make out a prima facie case based on questions not asked by the state. Further, we conclude that there is no clear proof that the prosecutor's stated reason for the challenge was pretextual")
Defendant: African American
Juror excluded: African American

- *State v. McDonough*, 631 N.W.2d 373, 386 (Minn.2001) (finding that "the district court did not clearly err when it determined that McDonough did not meet his burden of proving intentional discrimination" when the prosecution used a preemptory strike to remove the sole African-American juror on the jury panel)
Defendant: African American
Juror excluded: African American

- *State v. Taylor*, 650 N.W.2d 190, 202–03 (Minn.2002) (recognizing that appellate courts are to give great deference to the district court's finding on the issue of prosecutorial intent and noting that, "[w]hile additional explanation of the court's finding would have been helpful, it is reasonable to conclude that the prosecutor was not motivated by racial discrimination")
Defendant: African American
Juror excluded: Bi-racial (one parent Caucasian and one parent African American)

Visually, the result of what we've done is striking. In each case except this one,[2] we deferred to the trial court's decision irrespective of whether the trial court conducted the *Batson* analysis properly or whether we agreed with the trial court's conclusion. *See Taylor*, 650 N.W.2d at 202 (noting that the trial court did not apply the "proper *Batson* analysis at step two," but nonetheless concluding that the trial court did not clearly err when it upheld the strike of an African–American prospective juror); *James*, 520 N.W.2d at 404 (noting that the reasons given by the prosecutor were not compelling, but nonetheless deferring to the trial court's determination that they were not pretextual). If there was no abuse of discretion in *Taylor* or in *James*, there should be none here; put another way, if *Taylor* and *James* were correctly decided, the court is wrong here. Evidently, the court would like to have it both ways.

In each case except this one, the trial court denied the *Batson* challenge and upheld the strike of the juror.[3] In this case, the trial court sustained the *Batson* challenge, and today we hold that the challenge should have been denied. The message is clear, short of an explanation that is "not the sort of racially-neutral explanation * * * contemplated in *Batson*," *McRae*, 494 N.W.2d at 257, prospective jurors of color stricken by either party cannot expect to have their right to serve as a juror vindicated. Having deferred to the trial court in every previous case in which we applied our deferential standard of review, it is beyond ironic that, in this case with its Caucasian defendant, when we examine for the first time a finding by the trial court that the peremptory strike was pretextual, we decline to give the trial court any deference whatsoever. Therefore, I dissent.

ANDERSON, RUSSELL A., Justice (dissenting).

I respectfully dissent.

In my view, the majority has elevated the right to peremptory challenge over the right established by the Fourteenth Amendment to prevent the use of a peremptory challenge to exclude persons from the jury solely on the basis of race. The latter is prohibited by the Equal Protec-

---

**2.** I do note the existence of one other case in which this court reversed the defendant's conviction and remanded for a new trial without considering whether deference to the trial court was appropriate. The court concluded that, even though it could not be determined whether the prosecutor acted with discriminatory intent in striking an African–American prospective juror, the explanation given for the strike was "not the sort of a race-neutral reason * * * contemplated by *Batson*" and that the trial court did not consider whether the explanation given was a pretext for discrimination. *See State v. McRae*, 494 N.W.2d 252, 257 (Minn.1992).

**3.** Indeed, we have affirmed the lower court no matter how "fantastic" the explanation given by the proponent of the strike. In *Taylor*, the court upheld the denial of a *Batson* challenge in a case in which the explanation for the strike, while race-neutral, was what I, in my dissent, concluded was as "fantastic" as that used in *Purkett v. Elem*, 514 U.S. 765, 768, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995), and which the majority opinion characterizes as "nonsensical." *State v. Taylor*, 650 N.W.2d 190, 202, 211 (Minn.2002). The explanation given was that the prospective juror was indifferent toward police. *Id.* at 201 n. 8. In that "indifferent" means "[h]aving a neutral or unbiased disposition," *see Webster's New International Dictionary* 1266 (2d ed.1959), and that neutrality and lack of bias are precisely what we expect from a juror, it is unclear what if any explanation today might fall into the category of "not the sort of racially-neutral explanation * * * contemplated in *Batson*." *See McRae*, 494 N.W.2d at 257.

tion Clause of the United States Constitution. *Batson v. Kentucky,* 476 U.S. 79, 85–86, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Not only does a defendant have the "right to be tried by a jury whose members are selected pursuant to nondiscriminatory criteria," but prospective jurors have the right to participate in jury service and cannot be excluded on the basis of race. *Id.* at 85–86, 87, 106 S.Ct. 1712; *see also Georgia v. McCollum,* 505 U.S. 42, 48–49, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992). It is settled that a constitutional claim prevails over a nonconstitutional one. *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 180, 2 L.Ed. 60 (1803). The dissenting opinion in *Swain v. Alabama* recognized this principle: "Were it necessary to make an absolute choice between the right of a defendant to have a jury chosen in conformity with the requirements of the Fourteenth Amendment and the right to challenge peremptorily, the Constitution compels a choice of the former." 380 U.S. 202, 244, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965) (Goldberg, J., dissenting).

This is a racially charged case. A Caucasian defendant was charged with a brutal first-degree assault against a victim, a person of color, because the victim was speaking in Spanish at a work site. The charge and the circumstances surrounding it required that the trial judge be particularly sensitive to racial issues during voir dire, as the *Final Report of the Minnesota Supreme Court Task Force on Racial Bias in the Judicial System* recommends.[1] *See Minnesota Supreme Court Task Force on Racial Bias in the Judicial System Final Report* 37 (May 1993); *see also State v. Buggs,* 581 N.W.2d 329, 345 (Minn.1998) (Page, J., dissenting). The Task Force's

recommendations were based on their findings, including:

1. People of color are overrepresented in the number of individuals arrested and prosecuted and imprisoned, as well as in the number of individuals who are victims and witnesses.

2. Jury pools rarely are representative of the racial composition of a community.

3. People of color have a general distrust of the criminal justice system and exclusion from jury service fosters that distrust.

4. The ethnic, racial, and sexual make-up of a jury affects the outcomes of cases.

*Minnesota Supreme Court Task Force on Racial Bias in the Judicial System Final Report* 36. At voir dire, the second prospective juror examined was an African-American woman whose father was a police officer in Atlanta whom she saw "probably once every two years." Defense counsel questioned her first:

Q: Is there anything about the fact that your father is a police officer that would affect your ability to listen to police officers on the witness stand?

A: No, because I've worked with police officers before. I'm—I—when I was in high school I had some, like, training with them because I was going to—I wanted to be a cop and I did training with the police officers and police academy and stuff like that, but, I mean, I hear both sides. I'm not one to judge before I hear everything. Because my dad is a cop doesn't mean that I automatically have to, like, listen to everything they say or believe everything that they say.

---

1. In fact, because it is so important that race not play an impermissible role in excluding jurors, a judge may raise a *Batson* challenge sua sponte. Minn. R.Crim. P. 26.02, subd. 6a(2).

\* \* \* \*

Q: What do you think about the concept that the State must prove the Defendant guilty beyond a reasonable doubt?

A: I believe that. I think that people should not be convicted unless there is 100 percent [proof]. I need to see something that is solid in order to convict.

Defense counsel exercised a peremptory challenge even before he completed his examination of the juror and before the prosecutor conducted any voir dire of the juror. After the court excused the jury panel, the court asked defense counsel to explain the basis for his peremptory strike (step two of the *Batson* analysis).[2] Counsel explained that the reasons for excluding this juror were her "heavy law enforcement exposure" and "the fact that I am going to significantly question the police officers' conduct in this case and how they investigated the case." The prosecutor responded by addressing the third step of the *Batson* test, "[o]ur position, Judge, is that it's merely [pretextual]." Reiners' counsel rejoined that he was not striking the juror because of her race:

> Your Honor, just because a witness says they can be fair, that would be similar if [the juror in question] basically had been assaulted and said to the Court, "Well, I can be fair." To require me to keep her on the jury just because she says she can be fair is not fair to Mr. Reiners. I should have the right to strike her if I give a reason that is reasonable. And I have the other African Americans on the jury, I have them actually rated fairly high. I'll be honest

with the Court. I am not striking people because they are African American.

After hearing Reiners' counsel on the issue of pretext, the judge found that the reasons given by defense counsel were a pretext for racial discrimination and explained, "I listened to everything that was said and that was the basis of my ruling. I weighed and balanced everything that was said."

At step three of the peremptory challenge inquiry, the question for the court is whether counsel's race-neutral explanation is pretextual. *State v. Everett,* 472 N.W.2d 864, 868 (Minn.1991); *see also* Minn. R.Crim. P. 26.02, subd. 6a(3)(c). A "pretext" is an "ostensible reason or motive assigned or assumed as a color or cover for the real reason or motive." *Black's Law Dictionary,* 1187 (6th ed.1990). "[I]mplausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination." *Purkett v. Elem,* 514 U.S. 765, 768, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995) (per curiam). In determining whether counsel's reason is pretextual, the court must decide whether counsel's stated reason for peremptorily striking a juror should be believed. In making this determination, the court is to consider "all the relevant facts bearing on the issue." *State v. Gaitan,* 536 N.W.2d 11, 15 (Minn.1995); *accord Miller–El v. Cockrell,* 537 U.S. 322, 123 S.Ct. 1029, 1041, 154 L.Ed.2d 931 (2003) ("In the context of the threshold examination in this *Batson* claim the issuance of a COA [certificate of appealability] can be supported by any evidence demonstrating that, despite the neutral explanation of the prosecution, the peremptory strikes in the final

---

**2.** We have reviewed *Batson* challenges by going directly to the prong at issue in the past. *See State v. Taylor,* 650 N.W.2d 190, 201 (Minn.2002); *see also Hernandez v. New York,* 500 U.S. 352, 359, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991) (noting that trial court's failure to rule on step one because prosecutor defended his strikes without "prompting or inquiry" was not a problem; "[t]his departure from the normal course of proceeding need not concern us.").

analysis were race based."). There will seldom be much evidence on the issue, and the best evidence often will be the demeanor of the attorney who exercises the challenge. Other factors include "how reasonable, or how improbable, the explanations are; and by whether the proffered rationale has some basis in accepted trial strategy." *Id.*, 537 U.S. at ——, 123 S.Ct. at 1040. As with the evaluation of the state of mind of a juror challenged for cause, evaluation of the attorney's state of mind in step three of a *Batson* challenge hinges on the credibility of the attorney's explanation and the attorney's demeanor and lies " 'peculiarly within a trial judge's province.' " *Hernandez v. New York*, 500 U.S. 352, 365, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991) (quoting *Wainwright v. Witt*, 469 U.S. 412, 428, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985)); *see State v. Logan*, 535 N.W.2d 320, 323 (Minn.1995). Here the juror explained that her relationship to law enforcement was remote and that she would "strongly" require 100 percent proof to convict. The court observed the juror's demeanor and the answers she gave that were responsive to defense counsel's rationale for striking the juror. The court concluded that defense counsel's rationale for striking the juror was pretextual:

> Well, I do think it's a bit [pretextual] reasoned because you asked her or she volunteered and gave you, in one of your open-ended questions, that she would not believe a person just because they were a police officer. I think that was a very telling answer that supports your side of the case more so than it does the State. Most of the answers, I thought, were more favorable to you than to the State. So I am going to deny the strike, keep her on.

In *Batson*, and ever since, the trial court's decision on the ultimate question of discriminatory intent represents a finding of fact accorded great deference on appeal.

*Batson*, 476 U.S. at 98 n. 21, 106 S.Ct. 1712; *see also Hernandez*, 500 U.S. at 364, 111 S.Ct. 1859; *State v. Taylor*, 650 N.W.2d 190, 200–01 (Minn.2002); *State v. Moore*, 438 N.W.2d 101, 107 (Minn.1989). The rationale for such great deference to the trial court's decision on discriminatory intent is explained in *Hernandez:* "[d]eference to trial court findings on the issue of discriminatory intent makes particular sense in this context because, as we noted in *Batson*, the finding 'largely will turn on evaluation of credibility.' " *Hernandez*, 500 U.S. at 365, 111 S.Ct. 1859 (internal citation omitted). In this case, the jury selection process consisted of examining one prospective juror at a time and making peremptory challenges at the end of each examination. The *Batson* challenge at issue regards only the second prospective juror. Because the challenge came very early on in the jury selection, we do not have the total selection process to evaluate on appeal. To my thinking, the jury selection process used here provides all the more reason to give deference to the trial court.

While I agree that express findings on discriminatory intent in step three of a *Batson* analysis by the trial court are preferable, neither this court nor the United States Supreme Court has required such findings in the past. For example, in *Hernandez*, after the trial judge assessed the credibility of the prosecutor—as *Batson* and *Hernandez* suggest—the court, as described by the Supreme Court, made no express findings and simply denied the *Batson* challenge. *Hernandez*, 500 U.S. at 357–58, 111 S.Ct. 1859. In *State v. Stewart*, a Minnesota case, the trial judge stated, "All right; the record is made." 514 N.W.2d 559, 563 (Minn.1994). From this comment, we inferred that the trial judge was satisfied with the explanation given for the peremptory challenge. *Id.* We concluded in that case that a trial judge's

failure to explicitly rule on a *Batson* objection does not automatically require a new trial. *Stewart,* 514 N.W.2d at 563. In fact, where the court cannot discern counsel's pattern of questioning or striking jurors, as in this case, express findings may be difficult to make.

We have given great deference to the trial judge's decision on the ultimate issue of discriminatory intent in cases, such as this one, where the trial court did not follow *Batson's* three-step analysis by the letter. *See, e.g., Gaitan,* 536 N.W.2d at 16; *Stewart,* 514 N.W.2d at 563; *Moore,* 438 N.W.2d at 107. How ironic that this court should find an abuse of the great discretion we accord trial courts in a case in which a Caucasian defendant is accused of brutally assaulting a person of color because he was speaking Spanish in the work place and the trial judge decided that a peremptory challenge of a juror of color reflected discriminatory intent.

PAGE, Justice (dissenting).

I join in the dissent of Justice Russell A. Anderson.

ANDERSON, PAUL H., Justice (dissenting).

I respectfully dissent for many of the same legal reasons articulated by Justices Alan Page and Russell A. Anderson in their separate dissents. We grant great deference to the district court in these matters, as Justice Page so clearly points out in his dissent. *See Hernandez v. New York,* 500 U.S. 352, 365, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991). Therefore, I conclude that on the facts of this case, the district court did not abuse its discretion when it denied Reiners' peremptory challenge against this prospective juror.